526 P.2d 1290

Mary CORDOVA, mother of decedent, Antonio Cordova, as Administratrix of the Estate of Antonio Cordova, Plaintiff-Appellant,

v.

CITY OF ALBUQUERQUE, a municipal corporation, and Riolino Polo, Jose "Bennie" Salazar, Wayne Larson, Police Officers of the Albuquerque Police Department, Individually and Ted Drennan, Leroy Urioste, Ralph McNutt, State Policemen for the State of New Mexico in their Individual capacities, and Wylie Brothers Contracting Company, Defendants-Appellees.

No. 1414.

Court of Appeals of New Mexico.

Sept. 11, 1974.

Sutin, J., concurred in result.

William H. Brogan, Duhigg & Cronin, Albuquerque, for appellant.

Robert G. McCorkle, Rodey, Dickason, Sloan, Akin & Robb, P. A., Albuquerque, for appellees City, Polo, Salazar, Larson, Drennan, Urioste and McNutt.

Mel E. Yost, James A. Parker, Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, for appellee Wylie Bros.

## OPINION

WOOD, Chief Judge.

Antonio Cordova and Rito Canales were killed by police gunfire on the night of January 28, 1972. The shooting occurred near sheds containing dynamite and blasting caps. The sheds were located within the right-of-way for a highway construction project. The contractor for the project was Wylie (Wylie Brothers Contracting Company, a corporation). Plaintiff, as Administratrix of Cordova's estate, sought damages for the wrongful death of Cordova. There are two categories of defendants; the police defendants (City of Albuquerque, three Albuquerque Police Officers and three New Mexico State Police Officers) and Wylie. The trial court granted summary judgment in favor of all defendants; plaintiff appeals. We affirm.

Plaintiff states twelve points in her brief. These points group into the following issues: (1) the trial judge should have recused himself, (2) propriety of summary judgment for the police defendants, (3) propriety of summary judgment for Wylie, (4) the time of filing supporting affidavits, (5) failure to consider surrounding and preceding circumstances, and (6) failure of the trial court to give plaintiff additional time.

*The Trial Judge Should Have Recused Himself*

Judge Payne held two hearings on the motions for summary judgment; September 10th and October 1st, 1973. During the first hearing, counsel in argument, had referred to the organization known as the Black Berets. Near the conclusion of this first hearing, the judge remarked that "maybe I'm not the appropriate judge to hear this." He explained: (1) that in sentencing a person named Perry for a bombing, Perry had stated that he did the bombing in the company of Canales and had had some contact with the Berets; (2) that he heard the case involving a search which found dynamite at Beret headquarters and had quashed the search warrant.

Plaintiff made no response to the trial court's remarks, never asked that the judge recuse himself, never asserted that the judge was biased, never contended that the judge should not continue in the case. Specifically, no issue was raised in the trial court concerning Judge Payne hearing the case either at the hearing when Judge Payne made his remarks or at the second hearing twenty days later.

■ In this Court plaintiff asserts for the first time that Judge Payne should have recused himself because of the judge's "stated bias" and because with Judge Payne presiding, plaintiff was deprived of a "just hearing." Because the claim is directed against the judge, we do not answer this contention on the basis that the issue may not be raised for the first time on appeal. See Appellate Rule 11. We answer on the basis of the facts. Nothing in the record shows bias on the part of Judge Payne. Nothing in the record supports the claim of an unjust hearing. The record does not support plaintiff's contention.

*Propriety of Summary Judgment for the Police Defendants*

Goodman v. Brock, 83 N.M. 789, 498 P. 2d 676 (1972) states the applicable summa-

ry judgment procedure. The movant for summary judgment has the burden of showing an absence of a genuine issue of fact and that the movant is entitled to summary judgment. Once the movant makes a prima facie showing, the burden is on the party opposing the motion to show a genuine factual issue exists and that the movant is not entitled to summary judgment.

(a) Movant's Prima Facie Showing

The claim against the police defendants is that either they used or permitted the use of excessive and unwarranted force upon Cordova. Through affidavits and answers to interrogatories, the police defendants made the following showing in support of summary judgment.

On January 19, 1972 the police obtained information that someone would attempt to steal dynamite from the sheds. This information was conveyed to Wylie. The precaution taken was to place two padlocks on each shed. During the night the padlocks were cut and dynamite taken.

On the afternoon of January 28, 1972, the police received an anonymous tip that an attempt would be made to steal dynamite from the sheds. Hogland, the construction foreman for Wylie, was informed and was told that the police intended to stakeout the area and " 'pick them up this time.' " A bulldozer was moved to a "strategic location so that it could be used as cover by the officers."

Three teams of officers hid near the dynamite sheds. Each team consisted of two officers. One team was beneath the bulldozer.

When first observed, Cordova was standing alongside the bulldozer. He was carrying, at port arms, a military carbine with paratrooper stock. The weapon had a long clip. Cordova had his finger on the trigger. Cordova moved from the bulldozer to the area of the dynamite sheds.

Canales was seen a short time later. When first observed, he also was standing alongside the bulldozer. In his right hand he carried an automatic in a raised pistol position. The hammer was back. Canales had his finger in the trigger guard. In his left hand Canales carried a bolt cutter.

Canales joined Cordova at the dynamite sheds. One of them flashed a light several times in a southeasterly direction. Canales started working on the lock of one of the sheds with the bolt cutter. The two then conferred; again a light was flashed.

"At this point, I decided to take the subject in custody. * * * I then shouted, ' "Freeze, Police Officers." ' " This shout was by one of the officers underneath the bulldozer. Cordova fired in the direction of these officers who returned the fire. Cordova was wounded by this fire.

Officers from at least two of the teams approached the dynamite sheds. Cordova was observed "half lying-half sitting" between two of the sheds. Cordova pointed his carbine in the direction of two officers as if to fire. The officers immediately fired. "I believe Cordova died at that instant."

The showing is that Canales attempted aggravated burglary, a third degree felony. Sections 40A–16–4 and 40A–28–1(B), N. M.S.A.1953 (2d Repl.Vol. 6). The showing is that Cordova was either an accessory or a conspirator. Sections 40A–1–14 and 40A–28–2, N.M.S.A.1953 (2d Repl.Vol. 6). The showing is that Cordova's conduct in connection with the attempted burglary of the dynamite shed was a felony.

In addition, the showing is that the officers were in the lawful discharge of their duties and that when told to "freeze," Cordova fired at the officers. This also showed a felony. Section 40A–22–21(A)(1) and (3) and (B), N.M.S.A.1953 (2d Repl.Vol. 6).

■ The felonies shown were committed in the presence of the officers. City of Roswell v. Mayer, 78 N.M. 533, 433 P.2d 757 (1967); Cave v. Cooley, 48 N.M. 478, 152 P.2d 886 (1944). The officers' duty, when fired upon, was not to retreat but to press forward and place Cordova under physical restraint. In so doing, the offi-

cers could defend themselves and use deadly force if such were justified by the circumstances. Alaniz v. Funk, 69 N.M. 164, 364 P.2d 1033 (1961); compare, State v. Vargas, 42 N.M. 1, 74 P.2d 62 (1937); § 40A–2–7(B), N.M.S.A.1953 (2d Repl. Vol. 6).

The circumstances shown were that the force used by the officers was neither excessive nor unwarranted. The police defendants made a prima facie showing entitling them to summary judgment. Goodman v. Brock, supra.

(b) The Contention That Movant's Showing Was Insufficient

At oral argument, plaintiff conceded there was nothing controverting the affidavits of the police defendants. Her claim is that the showing made did not make a prima facie case for summary judgment. This argument has two points: Unanswered questions and credibility.

Plaintiff asserts the showing of the police defendants was insufficient because of unanswered questions. One asserted unanswered question is whether there was an ammunition clip in Cordova's weapon. The record showing is that officers observed a clip, the officers stated they were fired at, and a report attached to answers to interrogatories states that two empty cartridges found at the scene had been fired from Cordova's weapon. Plaintiff asserts a photograph raises a question concerning the presence of an ammunition clip. It does not. The photograph is indistinct and cannot be taken to show either the presence or absence of a clip.

Other unanswered questions raised by plaintiff are: Why was the major access road to the area of the dynamite sheds not covered by a police surveillance team? Why did the police know the approximate time for the appearance of Cordova and Canales? Since Cordova and Canales arrived on foot, why didn't the police seek a third person or hunt for a vehicle? We do not necessarily agree that all of these questions are unanswered. However, we assume they are unanswered.

A movant for summary judgment is not required "to show or demonstrate beyond all possibility that no genuine issue of fact exists." Goodman v. Brock, supra. The police defendants had the burden of making a prima facie showing for summary judgment. This they did. The burden was then on plaintiff to show the existence of questions of fact requiring a trial. If the unanswered questions raised factual questions requiring trial, it was plaintiff's burden to show this. She did not do so. Plaintiff's alleged unanswered questions did not raise an issue as to the sufficiency of the showing made by the police defendants.

Plaintiff also contends the showing of the police defendants was insufficient because where credibility of the defendants is crucial, summary judgment is improper. The specific credibility question argued goes to the results of a test for gunpowder residue on gloves worn by Cordova. Plaintiff asserts this test result raises a question of fact as to whether Cordova actually fired a weapon. Since various affidavits affirmatively state that Cordova did fire, this contention goes to the credibility of the officers executing the affidavits.

Assuming, but not deciding, that the test result was properly before the Court, what does it show? The conclusion stated is: "Barium and antimony indicative of gunshot residue were not present on the swabs of the gloves submitted for test." The trial court asked the significance of this conclusion and stated his understanding that the absence of gunpowder residue doesn't necessarily mean that a weapon has or has not been fired. The response of plaintiff's counsel was to the effect that whether there was a question of fact depended both on the weapon and the ammunition, and that the ammunition had not been checked. This response means that without additional information the test result was without significance.

■ Absent a showing giving significance to the gunpowder residue test result, the test result, in itself, raised no question

of fact and raised no issue as to the credibility of the police affidavits. The burden was upon plaintiff to demonstrate the significance of the test result. This she did not do. The test result raised no issue as to the sufficiency of the showing by the police defendants.

### (c) The Contention That Plaintiff Showed Factual Issues Existed

Innuendo in plaintiff's brief and at oral argument is that Tim Chapa was a police informer who either took Cordova and Canales to the construction site or arranged for them to go to the site. The innuendo is that Chapa conspired with the police to cause the deaths of Cordova and Canales. Plaintiff characterized the event as "political." Plaintiff admitted at oral argument that nothing in the record supports the innuendo or characterization. With nothing to support a theory of a police conspiracy, there is no basis for the claim that a factual issue existed as to a conspiracy.

Chapa's deposition was taken. Chapa not only denied any conspiracy, he denied he was a police informer and denied any knowledge of the affair at the construction site. Plaintiff asserts that affidavits of several persons contradict portions of Chapa's deposition testimony. Contradictions do exist but they go to the extent of Chapa's involvement with the Black Berets and the group known as Alianza. The contradictions also go to the time when Chapa attended and left a party on the night of the killings, with whom he talked and with whom he left the party.

None of the contradictions are shown to be material to the issue of excessive or unwarranted use of force by the police. Plaintiff asserts the contradictions are material to her conspiracy theory but had admitted that theory is no more than innuendo. Absent any showing as to the materiality of the contradictions to the issue of police conduct, the contradictions did not show a factual issue existed.

### (d) Trial Court Refused to Consider Certain Items

Two items are involved. One item is the investigative report of Detective Sergeant Wood of the Bernalillo County Sheriff's Department. The trial court properly refused to admit the report because it was not in a form to be considered. Specifically, it was not an affidavit. Section 21–1–1(56)(e), N.M.S.A.1953 (Repl.Vol. 4). See Rekart v. Safeway Stores, Inc., 81 N.M. 491, 468 P.2d 892, 38 A.L.R.3d 354 (Ct.App.1970).

In addition, the trial court ruled that Wood's report "would not change the situation." We agree. Wood was part of a backup team of officers waiting near, but not at, the construction site. He was not present at the scene of the shooting when the shooting occurred. Wood's report contradicts the affidavits of the police officers on two matters—the time the stakeout teams went to the area of the dynamite sheds and whether the stakeout teams were maintaining radio silence immediately prior to the shooting. Plaintiff makes no effort to show how these two matters raised any questions of fact material to the issue of excessive or unwarranted force.

The second item is the affidavit of Edward M. Barton, identified as a retired police officer from Utah, experienced in the investigation of homicides. At the hearing on September 10, 1973 plaintiff apparently had the results of Barton's investigation in this case in the form of a letter. The trial court properly refused to consider the letter because not an affidavit. Barton's affidavit was filed September 20, 1973. The claim is the trial court refused to consider Barton's affidavit at the hearing on October 1, 1973.

Nothing in the record shows plaintiff brought Barton's affidavit to the attention of the trial court at the October 1st hearing. The reason for not doing so is apparent. The affidavit, though lengthy, is largely hearsay. The affidavit speculates as to what Chapa would testify to, speculation contradicted by Chapa's deposition. The affidavit states a conclusion that the police were negligent in allowing Cordova

and Canales to reach the dynamite sheds and in not preventing the attempted burglary. The affidavit also concludes that there was a conspiracy between Chapa and the police. There is no factual basis, either in the affidavit or the record as a whole to support the conclusions. Barton's affidavit does not set forth facts which would be admissible in evidence and even if called to the trial court's attention, could not properly be considered. Smith v. Klebanoff, 84 N.M. 50, 499 P.2d 368 (Ct.App. 1972).

*Propriety of Summary Judgment for Wylie*

Plaintiff's claim against Wylie is that it "did enter into an agreement" with the other defendants, took "affirmative actions to cooperate with the willful and malicious actions of the other Defendants and by and through its direct participation was a proximate and direct cause" of Cordova's death. The claim is for damages resulting from acts done pursuant to a civil conspiracy. See Barber's Super Markets, Inc. v. Stryker, 84 N.M. 181, 500 P.2d 1304 (Ct. App.1972).

(a) Movant's Prima Facie Showing

■ Wylie's motion was supported by the affidavit of Hogland, its construction superintendent, and by certain of the police affidavits. The showing made by Wylie follows. Police informed Hogland of the planned burglary of the dynamite sheds on January 19, 1972. The burglary took place in spite of double padlocks on the sheds. Police informed Hogland of the tip that an attempted burglary of the sheds would occur on the night of January 28, 1972. Police officers had decided to stakeout the area of the sheds prior to contacting Hogland. When police contacted Hogland, they informed him a stakeout would occur in order to "'pick them up this time.'" Hogland's affidavit states he made no agreements with the police, never requested the stakeout and that no employee of Wylie was present at the time of the stakeout. Hogland's affidavit does show that he knew the stakeout would take place and

it may be inferred that he did not object to the stakeout.

Police affidavits add one item. It is the inference that Hogland cooperated with the police in moving a bulldozer into a position to provide a hiding place for officers involved in the stakeout.

The foregoing showing negates any agreement or action on the part of Wylie which caused or contributed to cause Cordova's death. Wylie made a prima facie showing entitling it to summary judgment. Goodman v. Brock, supra.

(b) The Contention That Movant's Showing Was Insufficient

Plaintiff asserts the showing is insufficient because in his affidavit Hogland speaks for the entire Wylie organization without establishing that he talked to anyone else in the organization. Hogland states that he was the construction foreman "in charge." This, prima facie, shows his authority to speak for Wylie; it would be plaintiff's burden to demonstrate a question of fact as to Hogland's authority to speak for Wylie. This she did not do.

Similar to her argument concerning unanswered questions in the showing made by the police defendants, plaintiff asserts Wylie's showing is insufficient because of suspicious circumstances. These circumstances, according to plaintiff, are: Why did Mr. Claude Wylie, Jr. appear mysteriously on the scene after the shootings had taken place? Why did Hogland cooperate with the police by moving the bulldozer to tiff's argument concerning suspicious circumstances is that a conspiracy existed between Wylie and the police, and that Hogland's affidavit is insufficient because the conspiracy must have existed at a level higher than the position occupied by Hogland. On this record, plaintiff's argument has no basis other than speculation. To render Wylie's prima facie showing of "no agreement" insufficient for summary judgment, it was plaintiff's burden to demonstrate the existence of a factual issue. This she did not do.

Plaintiff also contends Wylie's showing was insufficient because "a question raised by the presentation of the case * * * [is] whether or not Wylie Brothers was negligent in their cooperation with the police, * * *." Plaintiff asserts there was no "testimony * * * contrary to this allegation," and "the Court refused to hear any testimony on it." Plaintiff gives no transcript references supporting any of the assertions made. The pleadings do not assert "negligent cooperation" against Wylie nor was such a contention raised to the trial court. We do not consider whether Wylie made a prima facie showing of an absence of negligence because nothing shows such an issue existed. The claim that the trial court refused to hear testimony on a nonexistent issue is frivolous.

### (c) The Contention That Plaintiff Showed Factual Issues Existed

Plaintiff asserts "a clear question as to the presence of a conspiracy was recited by the pleadings and presented to the Court." Plaintiff's complaint did allege that Wylie engaged in a conspiracy. This allegation was unsworn. Wylie made a prima facie showing of no conspiracy. Plaintiff's unsworn allegation was insufficient to controvert Wylie's showing and did not raise a factual issue as to the existence of a conspiracy. Rekart v. Safeway Stores, Inc., supra.

### (d) The Claim That Wylie Was Not Entitled to Summary Judgment as a Matter of Law

This contention is that regardless of the showing made by Wylie, summary judgment was improper as a matter of law. See Worley v. United States Borax and Chemical Corp., 78 N.M. 112, 428 P.2d 651 (1967).

Two legal theories are asserted to defeat summary judgment in favor of Wylie. The first is that Wylie had a duty of ordinary care to prevent injury to known trespassers. See Latimer v. City of Clovis, 83 N.M. 610, 495 P.2d 788 (Ct.App.1972). The claim is that once Wylie was informed that a trespass was imminent (the attempt-

ed burglary), Wylie had a duty to protect the trespasser from danger. The second is that Wylie had a duty not to willfully and wantonly injure unknown trespassers. See N.M.U.J.I. 10.3 and cases cited in the committee comment. The claim is that in permitting the police stakeout and in cooperating with the police in the location of the bulldozer, Wylie established a "machine hazardous to the life and limb" of Cordova. Plaintiff asserts Wylie did not make a prima facie showing of facts making these legal doctrines inapplicable to this case. We disagree.

■ Our answer has two parts. First, no such theories were raised in the trial court, either by the pleadings or in argument to the court. They cannot be raised here for the first time. Appellate Rule 11. Second, Wylie's showing is that no factual basis exists to which the legal theories may be applied. Wylie may be charged with knowledge that there might be trespassers. However, Wylie's showing is that the police stakeout was intended to apprehend the trespassers, to " 'pick them up this time.' " Absent some factual issue that Wylie knew of potential injury to the trespassers, the legal doctrines were not applicable and did not defeat summary judgment for Wylie.

### Time of Filing Supporting Affidavits

The police defendants filed their motion for summary judgment July 1, 1973. Wylie's motion was filed August 3, 1973. No affidavits were filed with these motions. Affidavits supporting the motions were filed August 31, 1973.

On the hearing date, September 10, 1973, plaintiff sought to have the supporting affidavits stricken because not timely filed. Error is claimed because the trial court denied the motion to strike. Plaintiff relies on § 21–1–1(6)(d), N.M.S.A.1953 (Repl. Vol. 4) which states: "When a motion is supported by affidavit, the affidavit shall be served with the motion; . . . ."

Because of differences between § 21–1–1(6)(d), supra, and the summary judgment rule, § 21–1–1(56), N.M.S.A.1953 (Repl.

Vol. 4), it may be questioned whether § 21–1–1(6)(d), supra, applies to summary judgment procedure. These differences are: (1) paragraphs (a) and (b) of the summary judgment rule authorize a party to move for summary judgment with or without supporting affidavits, and (2) the notice of hearing requirement in 6(d) is five days, while the notice of hearing requirement in 56(c) is ten days. However we assume, but do not decide, that § 21–1–1(6)(d), supra, applies to motions for summary judgment.

In Canning v. Star Publishing Company, 19 F.R.D. 281 (D.C.Del.1956) the motion for summary judgment was filed April 2, 1956. An affidavit supporting the motion was filed on the day of the summary judgment hearing, June 1, 1956. Ruling that § 21–1–1(6)(d), supra, left no room for judicial discretion, the trial court struck the affidavit.

*Canning,* supra, is incorrect in stating there is no room for judicial discretion. Section 21–1–1(6)(b), N.M.S.A.1953 (Repl. Vol. 4) authorizes a court to enlarge the time "[w]hen by these rules . . . an act is required . . . to be done at or within a specified time." Woods v. Allied Concord Financial Corporation (Del.), 373 F.2d 733 (5th Cir. 1967) held that § 21–1–1(6)(b), supra, was a rule of general application giving a trial court "wide discretion." In *Woods,* supra, an affidavit supporting a motion for summary judgment was filed on the day set for hearing the motion. The trial court in *Woods* did not abuse its discretion in receiving the supporting affidavit because defendants did not request additional time to refute the contents of the affidavit.

We do not decide this issue on the basis of § 21–1–1(6)(b), supra, because there is nothing indicating its provisions were followed. Our discussion of 6(b), supra, is to show that a rigid application of 6(d) is not contemplated.

██ Assuming that the supporting affidavits should not have been considered because they were not filed at the time the

motions were filed, a reversal would do no more than return the case to the trial court where defendants would refile their motions and affidavits at the same time. It is permissible to renew motions for summary judgment previously denied. 6 Moore's Federal Practice, ¶ 56.14[2] (1974) at p. 2258; Allstate Finance Corporation v. Zimmerman, 296 F.2d 797 (5th Cir. 1961); compare Kornfuehrer v. Philadelphia Bindery, Inc., 240 F.Supp. 157 (D.C.Minn. 1965), n. 3 at 159. The result would be to eliminate the question of whether the affidavits were timely filed and to renew in this Court the issues concerning the sufficiency of the affidavits to support summary judgment.

We avoid such a circuitous procedure. We do not concern ourselves with a violation of § 21–1–1(6)(d), supra, at the time the motions were filed. We consider the motions to have been refiled at the time the affidavits were filed. The result is a timely filing of the motions and supporting affidavits under § 21–1–1(56)(c), supra. This approach accords with the flexible approach contemplated by § 21–1–1(56)(e), supra.

*Failure to Consider Surrounding and Preceding Circumstances*

Plaintiff asserts the trial court refused to consider any evidence pertaining to any happenings except those at the construction site on the night of the shootings. This contention is based on a remark made by the trial court at the close of the first hearing on September 10, 1973. The trial court remarked: "Matters leading up to it [the shootings] or subsequent thereto are really immaterial. It's a question of what happened on that night."

The trial court's remark is taken out of context. During the course of this hearing, plaintiff had argued her theory of a conspiracy between Chapa and the police officers, relying on the letter of Barton. In refusing to consider the letter (previously discussed in this opinion), the trial court stated that if Barton could "support, by affidavit form, the facts which would

establish a real factual issue, then of course, the case will go to the jury." The trial court then gave plaintiff ten days to file affidavits. Plaintiff then inquired if it would be permissible to file affidavits in addition to an affidavit from Barton. The trial court remarked: "Certainly, enter whatever affidavits you have that—if they go to the factual issues."

The context of the court's remark is that matters prior to and subsequent to the shootings were immaterial unless they dealt with factual issues of the case. If there was a conspiracy in effect on the night of the shootings, the conspiracy would be material. The trial court's formal order after the hearing of September 10, 1973 gave plaintiff ten days in which to file affidavits creating a genuine issue "as to any material facts."

Plaintiff filed several affidavits and two requests for admissions after the first hearing, some of which plaintiff relied on at the second hearing on October 1, 1973. The record does not show the trial court refused to consider the contents of these items. Its ruling was that they failed to raise a factual issue. These items are discussed in the second issue of this opinion. There is no record support for this contention.

### Failure of Trial Court to Give Plaintiff Additional Time

A consistent theme in plaintiff's brief and oral argument was that she should have had more time in which to respond to the showing made by the defendants in support of their motions for summary judgment. This lack of additional time is asserted to be particularly acute in connection with plaintiff's theory of a conspiracy between Chapa and the police.

The initial complaint and the first amended complaint were filed by plaintiff pro se. Counsel entered an appearance for plaintiff on May 22, 1973 and filed a second amended complaint on June 28, 1973. This second amended complaint alleged the use of excessive and unwarranted force by the police defendants and alleged a civil conspiracy on the part of Wylie. The second amended complaint does not assert a conspiracy between Chapa and the police.

On August 6, 1973 plaintiff filed interrogatories addressed to the City of Albuquerque. One of the interrogatories inquired if Chapa was an informer for the Albuquerque Police Department. The City's sworn answers, filed August 31, 1973 deny that Chapa was an informer.

On September 5, 1973 plaintiff filed her motion asking that the summary judgment hearing scheduled for September 10, 1973 be continued because defendants did not file affidavits supporting their motions until the end of August and plaintiff had insufficient time to respond to the defense affidavits. In the motion plaintiff asked for an indefinite extension of time.

At the September 10, 1973 hearing plaintiff asked for additional time to prepare counter-affidavits since "the primary witness at this point is located in Utah." This was a reference to Barton. Plaintiff also sought additional time in which to depose Chapa. The trial court continued the hearing and gave plaintiff ten days in which to file affidavits.

Plaintiff took Chapa's deposition on September 19, 1973. She filed two affidavits on September 20, 1973. One of the two was the affidavit of Barton. She obtained an oral extension from the court for a "couple of extra days." She filed two additional affidavits on September 21, 1973. She filed another affidavit on September 24, 1973 and on that date filed requests for admissions concerning the gunpowder residue test and Detective Sergeant Wood's report.

At the second hearing on October 1, 1973 the trial court ruled, correctly, that no genuine issue of fact had been raised to defeat the motions for summary judgment. At this second hearing plaintiff recognized that Chapa denied any involvement in the shooting incident.

We summarize. A theory of a conspiracy in which Chapa was involved appears in interrogatories filed by plaintiff on Au-

gust 6, 1973. Plaintiff is given ten days after September 10, 1973 to file information raising a factual issue. She obtained an additional extension of a "couple" of days. She filed the affidavit of Barton. She took Chapa's deposition. Plaintiff was given time in which to develop information concerning a conspiracy theory; a theory known to plaintiff at least by August 6, 1973.

In the light of the foregoing we dispose of this issue on the following basis. At the hearing on October 1, 1973 plaintiff did not seek additional time. She did not raise this issue in the trial court. It will not be considered for the first time in this Court. Appellate Rule 11.

The summary judgments are affirmed.

It is so ordered.

HERNANDEZ, J., concurs.

SUTIN, J., concurs in the result reached.

Hendley, J., filed dissenting opinion.