2004-NMCA-087

94 P.3d 830

Frank **CORDOVA**, as Administrator of the Estate of Antonio Cordova Plaintiff–Appellant,

v.

Wayne **LARSEN**, Riolino Pollo, Jose "Bennie" Salazar, Leroy Urioste, Ted Drennan, Ralph McNutt, Albert Briggs, Santos Baca, Truman Woods, City of Albuquerque, County of Bernalillo, State of New Mexico, Defendants–Appellees.

No. 23,846.

Court of Appeals of New Mexico.

May 19, 2004.

Narciso Garcia, Jr., Garcia Law Office, Albuquerque, Lauro D. Silva, Albuquerque, for Appellant.

Robert M. White, City Attorney, Kathryn Levy, Assistant City Attorney, City of Albuquerque, Albuquerque, for City Appellees.

Tito D. Chavez, Bernalillo County Attorney, Linda M. Matteucci, Assistant County Attorney, Bernalillo County Attorney's Office, Albuquerque, William D. Slease, Jonlyn M. Martinez, Slease & Martinez, P.A., Albuquerque, for County Appellees.

Jerry Walz, Walz & Associates, Cedar Crest, for State Appellees.

## OPINION

PICKARD, J.

{1} Plaintiff filed an independent action in state court pursuant to Rule 1–060(B)(6) NMRA 2004, seeking to set aside the judgment in favor of the defendants in a 1973 wrongful death action. Defendants removed the case to federal court. Defendants moved to dismiss, arguing res judicata and collateral estoppel based on a 2000 federal court judgment dismissing a federal independent action in which Plaintiff and another party sought to set aside the same 1973 judgment. Plaintiff moved to remand the case to state court. The federal district court denied Defendants' motion to dismiss, yet also remanded the case to state district court. On remand, Defendants again argued that the independent action was barred by res judicata. The district court agreed with Defendants and dismissed the claim, and Plaintiff now appeals. We hold that the federal court order denying Defendants' motion to dismiss did not preclude the state court's consideration of Defendants' arguments. We also hold that the 2000 federal court judgment precludes Plaintiff's claim. We affirm.

## FACTS AND PROCEDURAL HISTORY

{2} In 1972, Antonio Cordova (Cordova) and Rito Canales (Canales) were killed by police officers. Acting as administrator of Cordova's estate, Mary Cordova, his mother, filed a wrongful death suit in state district court. In keeping with the understanding of the parties, we refer to this district court case as *Cordova I*. In 1973, the district court granted summary judgment for the defendants in *Cordova I*. *Cordova v. City of Albuquerque*, 86 N.M. 697, 699, 526 P.2d 1290,

1292 (Ct.App.1974). We affirmed the district court ruling in *Cordova I* in 1974. *Id.* [hereinafter *Cordova II*, in keeping with the understanding of the parties]. In our discussion of *Cordova II*, we explained that Plaintiff's unsupported innuendos that a defense witness, Tim Chapa, was in a conspiracy with the defendants to kill Cordova and Canales did not create a factual issue regarding whether such a conspiracy existed. We noted that Plaintiff's innuendos were directly contradicted by the summary judgment motion, which was accompanied by numerous affidavits that denied the existence of any conspiracy, including one from Chapa himself. *Id.* at 702, 526 P.2d at 1295.

{3} As *Cordova I* proceeded in state court, the estate of Canales filed a similar suit in federal district court, which we refer to herein as *Canales I*. That case went to trial in January 1974 and also included the issue of whether Tim Chapa was part of a conspiracy with the police. The jury found for the defendants.

{4} In 1999, Tim Chapa made an affidavit that purported to "clear [his] conscience in this matter regarding the hom[i]cides of Rito Canales and Antonio Cordova in January of 1972." The affidavit stated that Chapa had been a confidential informant for the state police in the 1960s and 70s, that he was asked to infiltrate an organization called the Black Berets, that he had devised a plan in conjunction with the police to kill members of this organization, and that the plan had culminated in the shootings of Cordova and Canales. Chapa also stated that the police officers involved threatened to kill him if he ever exposed this plan and that he denied the existence of the conspiracy during all the subsequent court proceedings because he feared for his life.

{5} In 1999, based on the Chapa affidavit, the Cordova and Canales families filed an independent action in the federal district court under Fed.R.Civ.P. 60(b), referred to hereinafter as *Canales & Cordova I*. *Canales v. Larsen*, No. CIV 99–1259 JC/RLP (D.N.M. Apr. 10, 2000). Federal Rule 60(b) reads in pertinent part:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (6) any other reason justifying relief from the operation of the judgment.... This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C., § 1655, or to set aside a judgment for fraud upon the court.

The suit asked the federal district court to set aside the judgments in *Cordova I* and *Canales I.* On April 10, 2000, the federal district court declined to do so, finding that the plaintiffs had failed to state a claim of fraud on the court, that the plaintiffs failed to demonstrate a meritorious underlying claim as Federal Rule 60(b) requires, and that the interests of finality required dismissal. The basis for the district court's ruling grounded on failure to state a claim of fraud on the court was (1) the distinction explained in *Bulloch v. United States,* 763 F.2d 1115, 1121 (10th Cir.1985), between fraud on the court, i.e., fraud directed to the judicial machinery itself, and ordinary fraud, i.e., false evidence or perjury and (2) the conclusion that Plaintiff alleged only the latter. In February 2001, the Tenth Circuit affirmed the federal district court's decision in a memorandum opinion. *Canales v. Larsen,* No. 00–2164, 2001 WL 184221 (10th Cir.Feb. 26, 2001).

{6} While *Canales & Cordova I* was proceeding in federal district court, Plaintiff filed another complaint in state district court. This complaint also cited Chapa's changed story and stated that it was an independent action to set aside the judgment in *Cordova I,* pursuant to Rule 1–060(B). Rule 1–060(B) is identical to its federal counterpart, Rule 60(b), except that it omits the passage concerning the United States Code. We refer to the litigation in this case, which extends to the present appeal, as *Cordova III.*

{7} Defendants removed *Cordova III* to federal district court in February 2000, prior to the federal district court's disposition of *Canales & Cordova I.* On April 28, 2000, after the federal district court dismissed *Canales & Cordova I,* Plaintiff moved to remand *Cordova III* to state court on the grounds that the removal motion was untimely and that state law predominated. Then, in June 2000, Defendants moved to dismiss *Cordova III,* arguing that because the federal district court had decided that Plaintiff failed to state a claim in *Canales & Cordova I,* Plaintiff's claims and issues in *Cordova III* were precluded.

{8} In May 2001, the federal district court issued a memorandum opinion and order remanding *Cordova III* to state court and denying Defendants' motion to dismiss. *Cordova v. Larsen,* No. CIV 00–273 JC/RLP (D.N.M. May 11, 2001). In the opinion, the federal court raised a jurisdictional issue sua sponte, citing the *Rooker [v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923)]-[District of Columbia Court of Appeals v.] Feldman,[* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)] doctrine, which bars lower federal court review of state court judgments. *Id.* at 5. The court cited a lack of subject matter jurisdiction as the basis for its remand of the case back to state court. *Id.* at 6. The court also addressed Defendants' motion to dismiss, explaining that because the *Rooker-Feldman* doctrine was a bar to its jurisdiction to review *Cordova I, Canales & Cordova I* was improperly decided and could not have a preclusive effect on *Cordova III. Id.* at 7.

{9} After returning to the state district court following remand, Defendants filed a motion to dismiss, arguing again that the decision in *Canales & Cordova I* precluded the claims and issues in *Cordova III.* The state district court dismissed Plaintiff's complaint with prejudice. Plaintiff appeals from this order of dismissal.

**1. The "law of the case" doctrine does not bar Defendants from relitigating their defense.**

{10} Plaintiff argues that the United States District Court's decision in *Cordova III* already decided the issue of whether Defendants could assert res judicata

(claim preclusion) and collateral estoppel (issue preclusion) defenses, holding that they did not apply because the federal district court lacked jurisdiction to review *Cordova I.* Although Plaintiff frames his argument as a matter of claim preclusion, the proper analysis is whether the federal district court's order denying Defendants' motion to dismiss became the "law of the case" in the subsequent state court proceedings. *See* Joan Steinman, *Law of the Case: A Judicial Puzzle in Consolidated and Transferred Cases and in Multidistrict Litigation,* 135 U. Pa. L.Rev. 595, 597 (1987). Like claim preclusion and issue preclusion, law of the case doctrine precludes relitigation of an issue. *Id.* at 597–98. "Under the law of the case doctrine, a decision on an issue of law made at one stage of a case becomes a binding precedent in successive stages of the same litigation." *Souter v. Ancae Heating & Air Conditioning,* 2002–NMCA–078, ¶ 24, 132 N.M. 608, 52 P.3d 980. The doctrine is similar to issue preclusion, except that issue preclusion relates to litigation of the same issue in successive suits, whereas law of the case doctrine relates to litigation of the same issue recurring within the same suit. Steinman, *supra* at 598 n. 8. As with other preclusion doctrines, we review the application of law of the case doctrine de novo. *Wolford v. Lasater,* 1999–NMCA–024, ¶ 4, 126 N.M. 614, 973 P.2d 866 (stating that review of claim preclusion is a legal question to be reviewed de novo).

{11} As a general matter, when a case is transferred from one district court to another, decisions of the transferring court are binding on the transferee court. 18 James Wm. Moore et al., *Moore's Federal Practice* § 134.22[3][a] at 134–54.5 to –55 (2003). However, there are several factors that counsel against a court's application of law of the case doctrine. Law of the case doctrine is discretionary, and courts will not use the doctrine when the decision to be applied preclusively is clearly erroneous or when it would result in manifest injustice. *Trujillo v. City of Albuquerque,* 1998–NMSC–031, ¶ 41, 125 N.M. 721, 965 P.2d 305.

{12} The federal district court in the present case based its decision on the *Rook-*er–*Feldman* doctrine. The *Rooker-Feldman* doctrine stems from the federal statutory provision that the United States Supreme Court may review state court judgments through a writ of certiorari. 28 U.S.C. § 1257(a) (2001); *see Pittsburg County Rural Water Dist. No. 7 v. City of McAlester,* 358 F.3d 694, 706–07 (10th Cir.2004). From this starting point, the United States Supreme Court announced in *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923), that a federal district court correctly dismissed a petition seeking to set aside a state court judgment on constitutional grounds because the United States Supreme Court is the only federal court with the power to set aside or modify state court judgments. In *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), the United States Supreme Court extended the rule that "lower federal courts possess no power whatever to sit in direct review of state court decisions" to encompass claims that are "inextricably intertwined with" a state court judgment. *Id.* at 483, 103 S.Ct. 1303 n. 16 (internal quotation marks and citation omitted). The *Rooker-Feldman* doctrine is a jurisdictional bar. *See Pittsburg County Rural Water Dist. No. 7,* 358 F.3d at 705, 707. The federal district court in the present case based its remand on *Rooker-Feldman,* stating that if it retained jurisdiction, "it would require a federal court to determine whether or not the state court judgment in *Cordova I* was erroneously entered or was void." *Cordova v. Larsen,* No. CIV 00–0273 JC/RLP, at 6.

{13} Initially, we note that we see support for the federal court's concern about the propriety of a federal court entertaining an independent action for relief from a state court judgment. Commentators suggest that the federal Anti–Injunction Act, 28 U.S.C. § 2283 (1948), and comity considerations should bar federal courts from entertaining such an action when similar relief is available in the jurisdiction rendering the judgment to be reopened. Restatement (Second) of Judgments § 79 cmt. d (1982); 11 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 2868 at 405–07 (2d ed.1995).

Others suggest that while jurisdiction to entertain a motion for relief from a state judgment may exist in the federal court, abstention is appropriate when a party seeks this type of relief. 12 James Wm. Moore et al., *Moore's Federal Practice* § 60.84[3] at 60–241 to –42 (2003). Federal circuits appear to be divided on the issue. *Compare Lundborg v. Phoenix Leasing, Inc.*, 91 F.3d 265, 272–73 (1st Cir.1996) (holding that abstention is proper because independent actions to reopen a judgment were available under state law, no federal interest was implicated, and comity principles counseled against reopening a state judgment), *and Sherman v. Marion County Child Support Div.*, 224 F.Supp.2d 1220, 1225–26 (S.D.Ind.2002) (holding that *Rooker-Feldman* doctrine barred a Rule 60(b) action to set aside a state court judgment), *with Morrel v. Nationwide Mut. Fire Ins. Co.*, 188 F.3d 218, 222–23 (4th Cir.1999) (relying on a pre-*Rooker* case to suggest that federal courts do have jurisdiction to entertain independent actions under Rule 60(b) that seek to reopen state court judgments), *and Securities & Exchange Comm'n v. ESM Group, Inc.*, 835 F.2d 270, 272–73 (11th Cir.1988) (evaluating the merits of a Rule 60(b) independent action to set aside a state court judgment).

■ {14} However, although the federal district court's decision to remand the case for lack of subject matter jurisdiction appears to be well supported, Plaintiff asserts that an order issued contemporaneously with the remand order precludes Defendants' arguments. This is problematic because a court without jurisdiction to hear a case cannot issue a valid order on the merits of that case. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). Once the federal district court decided it had no jurisdiction, the best course of action would have been to send the motion to dismiss back to the state court. *See In re Bear River Drainage Dist.*, 267 F.2d 849, 851 (10th Cir.1959). We recognize that adoption of a per se rule affording no preclusive effect to a remanding federal court's orders could pose its own problems. *See* 18B Charles Alan Wright et al., *Federal Practice and Procedure* § 4478.4 at 787–90 (2d ed.2002). However, in this case, an addi-

tional issue compounds the difficulty of applying the federal court's order denying the motion to dismiss as the law of the case.

■ {15} The federal district court in *Cordova III* based its denial of Defendants' motion to dismiss on the theory that the decision in *Canales & Cordova I* cannot be used to preclude issues or claims because the court lacked subject matter jurisdiction to set aside *Cordova I*. This is inaccurate. First, it is well established that "[a] party that has had an opportunity to litigate the question of subject-matter jurisdiction may not ... reopen that question in a collateral attack upon an adverse judgment." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n. 9, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); *see also Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376, 60 S.Ct. 317, 84 L.Ed. 329 (1940) (stating a lower federal court's determination of jurisdiction is not subject to collateral attack when parties are before the court "in accordance with the requirements of due process"). Plaintiff, having availed himself of federal court jurisdiction in *Canales & Cordova I* and never contesting federal jurisdiction during that proceeding, cannot now advance his cause through a collateral attack on the federal court's jurisdiction in that case.

{16} Second, it is critical to note that the judgment in *Canales & Cordova I* was final and all appeals were completed. In contrast to a judgment rendered by a court that is known to have no subject matter jurisdiction while the case is pending, federal courts have held that "lack of subject matter jurisdiction [in a finally determined case] generally has no bearing on the preclusive effect of the judgment." 18 *Moore's Federal Practice* § 131.30[1][d] at 131–89 (gathering federal cases on this point). If a court were to determine that a final and closed judgment has no preclusive effect because the rendering court had no subject matter jurisdiction, this would be tantamount to an impermissible collateral attack on the closed judgment. Courts do not have the power to prevent a party from using a finally determined case preclusively in the way that the federal dis-

trict court did here. *See Ansalve v. State Farm Mut. Auto. Ins. Co.,* 669 So.2d 1328, 1332–33 (La.Ct.App.1996) (explaining that judgments in cases in which the federal court did not have subject matter jurisdiction but proceeded to final judgment without objection have preclusive effect, while orders issued by a court whose lack of jurisdiction is determined during the proceedings do not). Accordingly, Plaintiff's assertion that when "jurisdiction is lacking the judgment is void" applies to the federal district court's denial of Defendants' motion to dismiss because the case was still pending. However, Plaintiff's assertion does not apply to permit a collateral attack on the final and closed judgment in *Canales & Cordova I. See id.*

{17} Plaintiff's contention that Defendants should be bound by the federal district court's decision because they failed to take an appeal from it is also incorrect. The remand order in this case was made pursuant to 28 U.S.C. § 1447(c) (2001), which states, "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Federal law clearly states that there is no appellate review of remand orders based on 28 U.S.C. § 1447(c). 28 U.S.C. § 1447(d); *Kennedy v. Lubar,* 273 F.3d 1293, 1297 (10th Cir.2001). Because we have held that the federal court decision on the motion to dismiss in this case prior to remand was void for lack of subject matter jurisdiction, we see no reason to consider whether Defendants might have applied for interlocutory appeal of that motion alone.

{18} In summary, our holding casts no doubt on the federal district court's decision to remand the case for lack of subject matter jurisdiction. It is this very decision that left the court without power to render a decision on Defendants' motion to dismiss. In addition, even if the court had the authority to decide Defendants' motion to dismiss, it denied the motion through an erroneous collateral attack on *Canales & Cordova I.* For these reasons, we hold that the federal district court's denial of Defendants' motion to dismiss does not preclude Defendants from raising their arguments again in state district court.

**2. Claim preclusion bars Plaintiff's claims.**

{19} "The doctrine of claim preclusion ... prevents a party from repeatedly bringing the same cause of action against the same person." *Ford v. N.M. Dep't of Pub. Safety,* 119 N.M. 405, 407, 891 P.2d 546, 548 (Ct.App.1994). Defendants argue that the federal court decision in *Canales & Cordova I* bars Plaintiff's claim because Plaintiff raised the same issues and the federal courts decided that his arguments were insufficient to support a Rule 60(b) independent action.

{20} We review the trial court's application of claim preclusion de novo. *Wolford,* 1999–NMCA–024, ¶ 4, 126 N.M. 614, 973 P.2d 866. In determining the preclusive effect of a federal court judgment, we look to the federal law of claim preclusion. *Ford,* 119 N.M. at 409, 891 P.2d at 550. There are four elements that must be present in order to determine that a claim is precluded: (1) there must have been a final judgment on the merits, (2) the parties must be identical or in privity, (3) the suit must have been based on the same cause of action, and (4) the plaintiff must have had the full and fair opportunity to litigate the claim. *Nwosun v. Gen. Mills Rests.,* 124 F.3d 1255, 1257 (10th Cir.1997), *limited on other grounds by Yapp v. Excel Corp.,* 186 F.3d 1222, 1227 (10th Cir.1999).

{21} Plaintiff does not contest that the parties and cause of action are the same in this action and *Canales & Cordova I.* Plaintiff argues that there was no valid final judgment on the merits because of the subject matter jurisdiction issues discussed above, which we have already resolved and need not reiterate. Plaintiff also argues that he has not had a full and fair opportunity to litigate the matter because there has never been a judgment on the merits of his original wrongful death claim due to the alleged conspiracy detailed in the Chapa affidavit. Plaintiff misapprehends the requirements of this element. Defendants do not assert that the judgment on the merits of his wrongful death claim in *Cordova I* precludes the present claim. Instead, Defendants assert that the merits of Plaintiff's Rule 60(b) independent action have

already been determined in *Canales & Cordova I*. Plaintiff does not argue, and there is no question that, Plaintiff had a full and fair opportunity to litigate his Rule 60(b) independent action in the federal district court and on appeal. Thus, this requirement is fulfilled.

{22} Plaintiff also argues that an extraordinary and compelling reason exists to overcome claim preclusion. He cites our opinion in *Apodaca v. AAA Gas Co.*, 2003-NMCA-085, ¶ 84, 134 N.M. 77, 73 P.3d 215, which stated that a party may overcome policies favoring preclusion when "one of the parties conceals material information, labors under some physical or mental disability that impedes effective litigation, or where the different amounts in controversy between the two actions would render preclusion unfair." He argues that in this case, parties concealed material information as alleged in the Chapa affidavit. Again, this is the incorrect analysis. There is no allegation that Defendants concealed material information in the case being applied preclusively, that is, in *Canales & Cordova I*. Defendants' alleged concealment of information occurred during *Cordova I*, and this allegation was part of Plaintiff's fully litigated case in *Canales & Cordova I*. No other extraordinary circumstances counsel against application of claim preclusion here.

{23} To the contrary, policy considerations informing the doctrine of claim preclusion counsel in favor of Defendants. "The underlying principle behind res judicata is to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and by preventing inconsistent decisions, encourage reliance on adjudication." *Three Rivers Land Co., Inc. v. Maddoux*, 98 N.M. 690, 694, 652 P.2d 240, 244 (1982) (internal quotation marks, citation, and emphasis omitted), *overruled on other grounds by Universal Life Church v. Coxon*, 105 N.M. 57, 58, 728 P.2d 467, 468 (1986). We are presented here with a case in which Plaintiff did not even await resolution of his claim in federal court in *Canales & Cordova I* before filing an identical claim in state court in *Cordova III*. Two weeks after receiving an unfavorable decision in federal court, Plaintiff moved to remand his state court action, which had been removed to federal court, back to state court. This was a blatant attempt to avoid the federal court's adverse decision, as evidenced by a statement in Plaintiff's response to Defendants' motion to dismiss: "[I]f this [c]ourt denies Plaintiff's [m]otion to [r]emand, then Plaintiff agrees that the doctrines of res judicata and/or collateral estoppel, based upon the court[']s prior judgment, bar Cordova's claim." Plaintiff provides us with no authority for the proposition that a judgment that is preclusive in federal court is not preclusive in state court. Yet, he seeks to capitalize on the federal district court's remand of the case to force Defendants into another round of litigation on the same claim. This is completely contrary to the considerations of conservation of judicial resources and avoidance of the cost and effort associated with protracted litigation.

**CONCLUSION**

{24} We affirm the trial court's dismissal of Plaintiff's claim based on the doctrine of claim preclusion.

{25} **IT IS SO ORDERED.**

ALARID and SUTIN, JJ., concur.