IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2010-NMCA-037

Filing Date: March 23, 2010

Docket No. 28,719

LAWRENCE ALBA,

    Plaintiff-Appellant,

v.

LORNA D. HAYDEN, aka LORNA
HAYDEN, JEFF WHITE, aka JEFF L.
WHITE, aka JEFFREY L. WHITE, and
all persons claiming ownership or right of
possession to Unit 4, Block 189, Lots 4 and 5
of Rio Grande Estates subdivision located
in Socorro County, New Mexico,

    Defendants-Appellees.

APPEAL FROM THE DISTRICT COURT OF SOCORRO COUNTY
Matthew G. Reynolds, District Judge

G. Holdt Garver, Chartered
G. Holdt Garver
Albuquerque, NM

L. Helen Bennett, P.C.
L. Helen Bennett
Albuquerque, NM

for Appellant

Steven J. Clark
Peralta, NM

for Appellee White

**OPINION**

**VIGIL, Judge.**

**{1}** This case involves a property ownership dispute. Defendant White's ownership interest in the property arose from a quitclaim deed from Defendant Hayden, whose ownership interest arose out of a real estate contract between Hayden and Plaintiff, which Plaintiff contended was invalid. In Plaintiff's action against Defendants, Hayden failed to answer requests for admissions, which resulted in summary judgment being entered against her. Following a trial on the merits between Plaintiff and White, the district court concluded that the real estate contract between Plaintiff and Hayden was valid and that White obtained valid title from Hayden. The issue presented in this appeal is whether White is bound by the summary judgment entered against Hayden because White's title derived from Hayden. We hold that White is not bound by the summary judgment entered against Hayden and affirm the district court.

**BACKGROUND**

**{2}** Plaintiff owned a parcel of land located in Socorro County, New Mexico. In July 2003, Plaintiff signed a real estate contract and forwarded it to Hayden for her to purchase the disputed real estate. Hayden signed the real estate contract and began making payments on the property. Plaintiff claimed that he orally withdrew his offer before Hayden signed the contract, and in November 2003, Plaintiff refused to accept further payment from Hayden. Hayden subsequently transferred her interest in the property to White by a quitclaim deed dated July 1, 2005. White recorded both the real estate contract and quitclaim deed.

**{3}** In August 2006, Plaintiff initiated this action against Hayden and White asserting claims of forcible entry, unlawful detainer, slander of title, conspiracy, assault/harassment, prima facie tort, and quiet title. White filed an answer to the complaint and a counterclaim requesting a determination regarding his rights under the real estate contract. Hayden filed a pro se answer to Plaintiff's complaint but failed to respond to discovery propounded by Plaintiff, which included requests for admissions. Plaintiff's motion to compel discovery was granted by the district court, and the requests for admissions were deemed admitted pursuant to Rule 1-036(A) NMRA when Hayden again failed to respond. These included an admission that Hayden did not sign the real estate contract prior to Plaintiff's withdrawal of his offer, that Hayden only executed the real estate contract after Plaintiff had rescinded his offer for Hayden to purchase the land, and that Hayden had not given any written assignment of any rights she claimed to have possessed to White. Based on Hayden's admissions, Plaintiff filed a motion for summary judgment against Hayden, to which she failed to respond. The district court granted Plaintiff's motion, entered summary judgment against Hayden, and ordered that the real estate contract of record be cancelled.

**{4}** Thereafter, a bench trial was held to resolve the property dispute between Plaintiff and White. At the bench trial, Plaintiff argued that, because the real estate contract had been cancelled in the judgment against Hayden, White had no claim to the property. Plaintiff also filed a motion requesting that White be collaterally estopped from claiming ownership of the property. The district court rejected Plaintiff's argument and ruled in favor of White based on the evidence presented at the bench trial. In pertinent part, the district court found that

2

Plaintiff and Hayden entered into a valid real estate contract dated July 14, 2003; that Hayden made payments on the property from July 14, 2003, until November 2003; that Hayden transferred her interest in the property to White by a quitclaim deed; and that despite a tender by White and Hayden, Plaintiff refused to accept payment in full for the land, under the mistaken belief that he had that right. The district court concluded that Plaintiff failed to withdraw his offer to enter into the July 14, 2003 contract before Hayden accepted the offer in writing and made payments on the contract; that Plaintiff's attempt to revoke the contract was of no legal effect; that Hayden was in compliance with the contract at the time of her transfer to White by quitclaim deed, and she held equitable title to the property; and that Hayden had legally transferred her interest in the real estate contract to White by signing a quitclaim deed of the property to White. The district court ordered that within sixty days, White tender into the registry of the court the balance owed under the real estate contract in the form of a cashier's check or money order and that when Plaintiff's attorney received verification of the tender, Plaintiff was ordered to execute a quitclaim deed in favor of White as the successor in interest to Hayden, the original purchaser.

**DISCUSSION**

**{5}** Plaintiff's appeal requires this Court to decide what binding effect, if any, the summary judgment granted against Hayden has on White. Plaintiff makes two arguments in support of his position. First, Plaintiff contends that principles of res judicata and collateral estoppel precluded White from litigating his interest in the disputed real estate since his ownership interest in the land was derived from Hayden, and the district court had determined that Hayden had no ownership interest. In the alternative, Plaintiff argues that the doctrine of law of the case bars White from litigating this matter. We address each of Plaintiff's arguments in turn.

**{6}** "The principles of preclusion operate to promote finality in civil disputes by relieving parties of the burdens of multiple lawsuits, conserving judicial resources, and preventing inconsistent decisions." *Rosette, Inc. v. U.S. Dep't of the Interior*, 2007-NMCA-136, ¶ 32, 142 N.M. 717, 169 P.3d 704. Claim preclusion or res judicata "bars relitigation of the same claim between the same parties or their privies when the first litigation resulted in a final judgment on the merits." *Deflon v. Sawyers*, 2006-NMSC-025, ¶ 2, 139 N.M. 637, 137 P.3d 577 (internal quotation marks and citation omitted). Issue preclusion or collateral estoppel "prevents a party from re-litigating 'ultimate facts or issues actually and necessarily decided in a prior suit.'" *Id.* ¶ 13 (emphasis omitted) (quoting *Adams v. United Steelworkers of Am.*, 97 N.M. 369, 373, 640 P.2d 475, 479 (1982)). Res judicata and collateral estoppel, however, only apply to successive litigation and not to issues or claims raised in the same proceeding. *See Cordova v. Larsen*, 2004-NMCA-087, ¶ 10, 136 N.M. 87, 94 P.3d 830 ("[I]ssue preclusion relates to litigation of the same issue in successive suits[.]"); *Blea v. Sandoval*, 107 N.M. 554, 558, 761 P.2d 432, 436 (Ct. App. 1988) ("Under the doctrine of res judicata, a judgment on the merits in a *prior suit* bars a *subsequent suit* involving the same parties or their privies based on the same cause of action." (emphasis added)). Res judicata and collateral estoppel do not apply here.

**{7}** The doctrine of law of the case, on the other hand, "relates to litigation of the same

3

issue recurring within the same suit." *Cordova*, 2004-NMCA-087, ¶ 10. "Under the law of the case doctrine, a decision on an issue of law made at one stage of a case becomes a binding precedent in successive stages of the same litigation." *Id.* (internal quotation marks and citation omitted); *see also United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) ("Under the 'law of the case' doctrine, 'a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.'" (citation omitted)). We therefore conclude that the law of the case doctrine applies. Our review of how it applies is de novo. *See State ex rel. King v. UU Bar Ranch, Ltd.*, 2009-NMSC-010, ¶ 20, 145 N.M. 769, 205 P.3d 816 ("Whether law of the case applies, as well as how it applies, are questions of law subject to de novo review.").

**{8}** Application of the law of the case doctrine is discretionary and flexible. *Trujillo v. City of Albuquerque*, 1998-NMSC-031, ¶ 41, 125 N.M. 721, 965 P.2d 305. The law of the case doctrine "is a matter of precedent and policy; it is a determination that, in the interests of the parties and judicial economy, once a particular issue in a case is settled it should remain settled." *State v. Breit*, 1996-NMSC-067, ¶ 12, 122 N.M. 655, 930 P.2d 792. Plaintiff relies on *United States v. LaHue*, 261 F.3d 993 (10th Cir. 2001), to advance his argument that the law of the case doctrine bars White from litigating his ownership interest in the disputed property. We are unpersuaded. *LaHue* holds that "'when a rule of law has been decided adversely to one or more codefendants, the law of the case doctrine precludes all other codefendants from relitigating the legal issue.'" *Id.* at 1010 (quoting *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999)). However, the procedural posture of *LaHue* is not sufficiently analogous to the case before us to be instructive. *LaHue* deals with the preclusive effect given to an appellate decision where one defendant appeals and later the codefendants raise the same issue in a separate appeal. *Id.*

**{9}** In the present case, this Court is confronted with a summary judgment against a codefendant that is based on the codefendant's failure to respond to requests for admissions and the admissions, as a result, being deemed admitted. Thus, to determine the binding effect of a summary judgment under such circumstances, we must consider the binding effect of an admission by a defendant against a codefendant.

**{10}** Although Rule 1-036 does not address whether a defendant's deemed admissions can be used against a codefendant, this Court has held that such admissions *may not* be used against a codefendant. *See Wilson v. Galt*, 100 N.M. 227, 236, 668 P.2d 1104, 1113 (Ct. App. 1983) (stating that Rule 1-036 admissions apply to and bind the party making the admissions, not codefendants). Moreover, other courts that have addressed this issue have likewise concluded that the admissions of a defendant cannot be used against a codefendant. *See, e.g.*, *Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997) ("Deemed admissions by a party opponent cannot be used against a co-party."); *United States v. Wheeler*, 161 F. Supp. 193, 198 (W.D. Ark. 1958) (holding that facts deemed admitted as to one defendant because of his failure to respond to the plaintiff's request for admissions are not binding on a codefendant); *Darnall v. Petersen*, 592 N.W.2d 505, 510 (Neb. Ct. App. 1999) (noting that "[t]he federal courts have almost unanimously concluded that a rule 36 admission is not binding against a codefendant" and holding the same). Thus, to hold that a summary judgment premised on the admissions of one defendant should be given preclusive effect

4

against codefendants would run afoul of the principle that Rule 1-036 admissions are only binding on the party to whom they are directed.

**{11}** To the extent Plaintiff contends that a different result is required because White's claim is derivative to Hayden's, we disagree. In *Alipour v. State Automobile Mutual Insurance Co.*, 131 F.R.D. 213 (N.D. Ga. 1990) (order), State Automobile Mutual Insurance sought summary judgment against Bartow County Bank, the loss payee of the Alipours' insurance contract, based on the court's entry of a judgment against the Alipours due to the Alipours' failure to respond to discovery requests. The court noted that Bartow County Bank's rights under the insurance contract were purely derivative, such that "Bartow County Bank's right to payment pursuant to the loss payable clause depend[ed] on the Alipours' right to recover under the insurance contract." *Id.* at 215. The court held, however, that "even though the rights of Bartow County Bank, as loss payee, are derivative to the Alipours, the admissions of the Alipours are not attributable to the bank[.]" *Id.* at 214 (citation omitted). The court therefore concluded that "[p]rocedurally, . . . Bartow County Bank [should] have the opportunity at trial to prove that the Alipours are entitled to recover, and thus that State Auto is liable to it as loss payee, even though, due to their failure to respond to the requests for admissions, the Alipours are now precluded from recovering as a matter of law." *Id.* at 215-16.

**{12}** Similarly, in *Riberglass, Inc. v. Techni-Glass Industries, Inc.*, 811 F.2d 565, 566 (11th Cir. 1987), the trial court granted summary judgment against two codefendants "based upon their deemed admissions resulting from their failure to respond to various requests for admissions." The trial court concluded that, because the defendant was one of three guarantors of Techni-Glass's indebtedness, that he was destined to "rise or fall" with his coguarantors, and granted summary judgment against him as well. *Id.* at 566 n.1. The Eleventh Circuit reversed the summary judgment, stating that "[t]he district court erred in saddling [the defendant] with the deemed admissions of his codefendants." *Id.* at 567. The court reasoned that "[c]learly, the deemed admissions of his codefendants cannot bind [the defendant] where he actually responded to [the] plaintiff's requests in a timely and legally sufficient manner." *Id.* at 566.

**{13}** This Court is persuaded by the reasoning in *Alipour* and *Riberglass*. We therefore reject Plaintiff's argument and hold that a summary judgment against one defendant cannot bind a codefendant where the summary judgment is based on the deemed admissions of the defendant. Moreover, we note our agreement with *Alipour* that, since admissions by a defendant are not binding on a codefendant, a codefendant should still have the opportunity to prove that he or she is entitled to recover, regardless of the derivative nature of the claim. 131 F.R.D. at 215-16; *cf. United Salt Corp. v. McKee*, 96 N.M. 65, 67, 628 P.2d 310, 312 (1981) (stating that "where the liability of one defendant necessarily depends upon the liability of others," and one defendant defaults, "[t]he true mode of proceeding . . . is simply to enter a default . . . against him, and proceed with the cause upon the answers of the other defendants"). Thus, we conclude that the district court did not err by permitting White to present evidence supporting the existence of a real estate contract at the bench trial. Finally, because Plaintiff has not challenged the sufficiency of the evidence supporting the district court ruling that a valid real estate contract existed, we do not evaluate the evidence

presented in the district court. Accordingly, we affirm.

**CONCLUSION**

**{14}** For the reasons stated above, we affirm the judgment of the district court.

**{15}** **IT IS SO ORDERED.**

_____

**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**LINDA M. VANZI Judge**

**Topic Index for _Alba v. Hayden_, No. 28,719**

| | |
|---|---|
| **CN** | **CONTRACTS** |
| CN-RE | Real Estate Contract |
| CN-RS | Rescission |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-CE | Collateral Estoppel |
| CP-DC | Discovery |
| CP-LC | Law of the Case |
| CP-RJ | Res Judicata |
| CP-SJ | Summary Judgment |
| | |
| **PR** | **PROPERTY** |
| PR-QU | Quitclaim |
| PR-RE | Real Estate Contract |
| PR-TL | Titles |