This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**JESUS BARRAZA,**

Worker-Appellant,

v.                                                                          **NO. 32,723**

**ASSOCIATED PROPERTIES**
**INVESTMENT GROUP, INC.,**
**d/b/a ASSOCIATED PROPERTIES**
**CONSTRUCTION AND NEW MEXICO**
**MUTUAL CASUALTY CO.,**

Employer/Insurer-Appellees.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Terry S. Kramer, Workers' Compensation Judge**

James Rawley
Albuquerque, NM

for Appellant

Timothy R. Briggs
Albuquerque, NM

for Appellees

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

{1}     Worker appeals from the Workers' Compensation Administration's (WCA) order granting summary judgment to Employer/Insurer.  Unpersuaded that Worker demonstrated WCA error, we issued a notice of proposed summary disposition, proposing to affirm.  Employer/Insurer filed a memorandum in support of our notice, and Worker filed a memorandum in opposition to our notice.  We have duly considered the parties' responses and remain unpersuaded that Worker has demonstrated error.  Accordingly, we affirm.

{2}     Worker raises two issues on appeal.  He argues that, although his injury and diagnosis did not change, the WCA erred by refusing to increase his compensation under NMSA 1978, Section 52-1-56 (1989), based on (1) the change in his impairment rating according to the newest edition of the American Medical Association Guide (AMA Guide), [DS; MIO 3-4] and (2) an allegation that he had a change in physical capacity.  [DS 4; MIO 1-3]

{3}     Section 52-1-56 permits the WCA to increase compensation upon a showing that "the disability of the worker has become more aggravated or has increased without the fault of the worker[.]"  As Worker acknowledges, the compensation order of October 2005, under which the parties have been governed, ruled that Worker suffered a temporary total disability (TTD) from October 2004 through January 2005,

2

when he reached maximum medical improvement (MMI), and that he suffered no permanent partial disability (PPD). [MIO 3; RP 176-77] To the extent that Worker's alleged change in physical condition relates to a change in physical capacity that modifies PPD benefits, Defendant was found not to have a PPD, and therefore, there is no PPD to modify and no original assessment to change under NMSA 1978, § 52-1-26.4 (2003). *See Cordova v. KSL-Union*, 2012-NMCA-083, ¶ 10, 285 P.3d 686, ("PPD benefits are calculated by determining the level of impairment to the worker and adding to the impairment rating a calculation of statutorily defined modifiers under Sections 52-1-26.1 through 52-1-26.4 based on the worker's age, education, and physical capacity"), *cert. denied*, 295 P.3d 599 (No. 33,663, July 19, 2012); *Medina v. Berg Constr., Inc.*, 1996-NMCA-087, ¶ 27, 122 N.M. 350, 924 P.2d 1362 ("Section 52-1-26.4 allows a worker's initial impairment rating to be modified by his loss of physical capacity.").

{4}     We also note that in *Herrera v. Quality Imports*, 1999-NMCA-140, ¶¶ 6-8, 128 N.M. 300, 992 P.2d 313, this Court held that Section 52-1-56 refers to a change in a worker's physical condition, which we held does not include a change in physical capacity. *See id.* ¶ 9 (stating that the impractical effect of including physical capacity modification under Section 52-1-56 would require "[e]mployers and workers [to] be subject to frequent changes in compensation as injured workers' abilities to lift

3

weight changed over time"). Our notice observed, and Worker has not disputed, that he admitted his physical condition has remained the same since the compensation order was entered in 2005. [RP 171-77, 276] Worker's arguments overlook the above-stated consequences of the original compensation order and reject the language in *Herrera* as dictum. [MIO 2] Worker refers us to no controlling authority indicating that a change in physical capacity constitutes a change in physical condition, and, under these circumstances, we are not persuaded to adopt such a view.

{5}     Worker also contends that if we accept his change in physical capacity as a worsening physical condition occurring at the time of the new AMA Guide, the Sixth Edition (AMA Guide VI), we should allow a new period of TTD to begin until Worker reaches MMI. [MIO 3] Worker has not explained how he arrived at this result, and we disagree.

{6}     We are not persuaded that a change in Worker's impairment rating based solely on a distinction between AMA Guide VI and the Fifth Edition (AMA Guide V) constitutes a change in physical condition as contemplated by Section 52-1-56. Although Worker has not described the AMA Guide VI change that warranted the determination that he now has an impairment rating, it appears that Worker relies solely on a change in the AMA Guide and not on a change in his physical injury. Our notice proposed to hold that Worker's impairment rating is governed by the AMA

4

Guide V, which was the applicable AMA Guide at the time that Worker reached MMI. *See* NMSA 1978, § 52-1-24(A) (1990) (" '[I]mpairment' means an anatomical or functional abnormality existing after the date of [MMI] as determined by a medically or scientifically demonstrable finding and based upon the most recent edition of the [AMA Guide] to the evaluation of permanent impairment or comparable publications of the [AMA].").

{7} As we observed, in *Madrid v. St. Joseph Hosp.*, 1996-NMSC-064, 122 N.M. 524, 928 P.2d 250, the Supreme Court examined the required use of the AMA Guides for purposes of determining impairment. The Court addressed the fact that the AMA Guides are periodically revised. *See id.* ¶¶ 11, 14-15, 22, 32-37. One of the claims asserted by the worker in *Madrid* was an equal protection challenge to the Workers' Compensation Act's (the Act) mandatory application of the most recent edition of the AMA Guide to the impairment ratings of similarly situated workers who receive different impairment ratings based solely on when they reached MMI. *See id.* ¶¶ 32-37. The Court rejected the equal protection claim on the basis that the time of the injury is not, by itself, dispositive of whether workers are similarly situated. *See id.* ¶ 35 ("Where one worker requires substantial recovery time before reaching MMI, and another worker requires minimal recovery time before reaching MMI, the workers are not similarly situated."). The Court determined that "as drafted, the Act ensures that

each worker will receive an impairment rating and subsequent disability rating based on current medical developments." *Id.* ¶ 36. We find it to be an inescapable premise to the Court's holding that a worker's impairment is determined by the version of the AMA Guide that was most recent at the time the worker reaches MMI.

{8} As indicated, Worker reached MMI in January 2005, when AMA Guide V was the current edition. [RP 173, 175, 177] We hold that AMA Guide V governs Worker's impairment.

{9} We continue to believe that if the Legislature had intended that an impairment rating could be adjusted at any time based solely on revisions made to the AMA Guides, the Legislature would have expressly provided for that result. Instead, the Legislature indicated that a worsening physical condition was required for a worker to receive an increase in compensation. *See* § 52-1-56. Worker refers us to no controlling case law that has construed Section 52-1-56 to permit the modification of a compensation order based on a modification to the AMA Guide without a change in a worker's physical condition, and we are not persuaded to do so here. We agree with Employer's observation that in the absence of an express legislative mechanism for modifying a compensation order, the result advocated by Worker would undermine the finality of compensation orders and force parties to relitigate issues, contrary to our principles of res judicata and law of the case. *See, e.g.*, *Alba v.*

*Hayden*, 2010-NMCA-037, ¶¶ 6-8, 148 N.M. 465, 237 P.3d 767 (explaining the meaning of, and purpose for, the doctrines of res judicata and law of the case).

**{10}** For these reasons, we affirm the WCA's order denying Worker's claim.

**{11}** **IT IS SO ORDERED.**

_____

**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**J. MILES HANISEE, Judge**