**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Opinion Number: 2023-NMSC-024**

**Filing Date: August 14, 2023**

**No. S-1-SC-38169**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**JAIME VELETA,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Cindy Leos, District Judge**

Harrison & Hart, LLC
Nicholas T. Hart
Carter B. Harrison IV
Ramon A. Soto
Albuquerque, NM

for Appellant

Hector H. Balderas, Attorney General
Walter M. Hart, III, Assistant Attorney General
Santa Fe, NM

for Appellee

**OPINION**

**VARGAS, Justice.**

**{1}**    This case comes to the Court on direct appeal pursuant to Rule 12-102(A)(1) NMRA. Defendant Jaime Veleta appeals his conviction for willful and deliberate first-degree murder, claiming the district court made several evidentiary errors, improperly instructed the jury, permitted the entry of inconsistent verdicts, and violated his double jeopardy rights by allowing the inconsistent verdicts to stand. Defendant presents a novel argument that a verdict convicting him of first-degree murder but acquitting him of the lesser-included offenses of second-degree murder and voluntary manslaughter is

legally inconsistent. We take this opportunity to address New Mexico law on inconsistent verdicts to explain that only inconsistent convictions and not inconsistent verdicts are reviewed. When the evidence is sufficient to support the verdict of conviction,[1] we will not speculate as to why the jury acquitted a defendant of other charges. To examine the verdict of acquittal requires that either we rule based on pure speculation or we inquire into the jury's deliberations, neither of which we are willing to do.

## I.    BACKGROUND

**{2}**    In January 2008, Defendant and four others went to the house of Danny Baca (Victim) to confront him about a missing car that contained drugs. After discovering that the car had been stripped and the drugs were missing, Defendant and the other men took Victim from his home. Eventually, Defendant and two of his accomplices, Jose and Mario Talavera, drove Victim out to the mesa where Defendant shot Victim at least eighteen times, killing him, before lighting his body on fire. Shortly after killing Victim, Jose and Mario took Defendant to the bus depot where Defendant boarded a bus to Mexico. Defendant was charged with the murder of Victim in 2011 but was not extradited to New Mexico until 2018.

**{3}**    At trial, Jose and another of Defendants' accomplices, Gerardo Nuñez, testified at length about Defendant's involvement in Victim's murder. At the conclusion of the trial, the jury entered verdict forms convicting Defendant of willful and deliberate first-degree murder, felony murder in the first-degree, kidnapping, conspiracy, and tampering with evidence. The jury also entered verdict forms acquitting Defendant of second-degree murder and voluntary manslaughter. The district court vacated his felony murder conviction, merging it into his conviction for willful and deliberate first-degree murder, and sentenced him to life in prison. Defendant appealed directly to this Court. N.M. Const. art. VI, § 2 ("Appeals from a judgment of the district court imposing a sentence of death or life imprisonment shall be taken directly to the supreme court."); Rule 12-102(A)(1).

## II.    DISCUSSION

**{4}**    Defendant asks this Court to vacate his convictions, alleging the district court (1) abused its discretion when it permitted the introduction of evidence that Defendant fled the country following the murder of Victim, (2) erred when it improperly limited Defendant's cross-examination of two witnesses, violating his right to confrontation, (3) erred when it improperly instructed the jury with regard to the stepdown instruction and the lesser-included offenses of first-degree murder leading to a legally inconsistent verdict, and (4) erred when it entered his conviction for first-degree murder despite his implied acquittal. Defendant further claims that he is entitled to the reversal of his convictions and requests that the case be remanded to the district court for a new trial.

---

[1]This opinion uses *verdict of conviction* to refer to the jury's guilty verdict on a charge, giving rise to the district court's conviction on that charge. Similarly, we use *verdict of acquittal* to refer to the jury's not guilty verdict on a charge, giving rise to the district court's acquittal on that charge.

He argues, however, that retrial for first-degree murder, second-degree murder, or voluntary manslaughter is barred by double jeopardy. Finally, Defendant claims cumulative error. Concluding that there was no error, we affirm the district court.

## A.      Claims of Evidentiary Error

**{5}**      Defendant claims that the district court made evidentiary errors requiring reversal by (1) admitting evidence of Defendant's flight from New Mexico to demonstrate consciousness of guilt, (2) denying Defendant the opportunity to cross-examine Gerardo about his uncle's federal drug charges, and (3) limiting Defendant's cross-examination of Jose about his cooperation with law enforcement. "The admission or exclusion of evidence is within the discretion of the trial court. On appeal, the trial court's decision is reviewed for abuse of discretion." *State v. Hughey*, 2007-NMSC-036, ¶ 9, 142 N.M. 83, 163 P.3d 470. "An abuse of discretion arises when the evidentiary ruling is clearly contrary to logic" or when the district court "misapplies or misapprehends the law." *State v. Pacheco*, 2008-NMCA-131, ¶ 34, 145 N.M. 40, 193 P.3d 587 (internal quotation marks and citation omitted). For the reasons that follow, we conclude that the district court did not abuse its discretion in any of the evidentiary rulings challenged by Defendant.

### 1.      Flight evidence as consciousness of guilt

**{6}**      Defendant contends the district court abused its discretion by admitting evidence of his travel to Mexico immediately after Victim was killed as evidence of consciousness of guilt because the State failed to show that he knew he was being pursued by law enforcement at the time he left for Mexico. The State contends that knowledge of law enforcement pursuit is not a prerequisite for admission of flight evidence and asserts that "it is the contemporaneity of the occurrence of the crime and the flight that creates the reasonable inference of consciousness of guilt."

**{7}**      We agree with the State. "Flight evidence is admissible because [it] tends to show consciousness of guilt." *State v. Trujillo*, 1979-NMCA-055, ¶ 4, 93 N.M. 728, 605 P.2d 236 (internal quotation marks and citation omitted). "[T]he prosecution is not required to establish the reason for a defendant's flight," and "a defendant's knowledge that he was being pursued is not a predicate to the admission of flight evidence." *Pacheco*, 2008-NMCA-131, ¶ 37. Therefore, we determine there was no abuse of discretion and instead defer to the district court's determination that the probative value of this evidence substantially outweighed its prejudicial effect. *See State v. Bailey*, 2015-NMCA-102, ¶ 20, 357 P.3d 423 (explaining that Rule 11-403 NMRA gives the district court "much leeway" in deciding whether evidence's probative value substantially outweighs its prejudicial effect (internal quotation marks and citation omitted)), *aff'd*, 2017-NMSC-001, ¶ 26, 386 P.3d 1007 ("[T]he task under Rule 11-403 is not to exclude all uniquely prejudicial evidence—just that evidence having an unduly prejudicial impact on a defendant that far outweighs the evidence's probative effect.").

### 2.      Limitation on cross-examination of witnesses

**{8}** Defendant next contends that the district court abused its discretion by limiting his cross-examination of two of the State's witnesses and that this violated the Confrontation Clause of the Sixth Amendment to the United States Constitution. Defendant argues that the district court abused its discretion when it "prohibited [Defendant] from cross-examining [Gerardo] regarding [Gerardo's] uncle's federal charges" and limited his questioning of Jose regarding his cooperation with authorities. However, the record reflects that the district court allowed Defendant to cross-examine both witnesses thoroughly with minimal limitation. We hold that the district court did not abuse its discretion or violate Defendant's right to confrontation.[2] *See State v. Sanders*, 1994-NMSC-043, ¶ 23, 117 N.M. 452, 872 P.2d 870 ("The [district] court retain[s] wide latitude insofar as the Confrontation Clause is concerned . . . . The Confrontation Clause merely guarantees an opportunity for effective cross-examination . . . ." (second alteration in original) (internal quotation marks and citation omitted)).

**{9}** "[W]hile the scope of cross-examination usually lies within the sound discretion of the district court, Confrontation Clause claims are issues of law that we review de novo." *State v. Gonzales*, 1999-NMSC-033, ¶ 22, 128 N.M. 44, 989 P.2d 419 (internal quotation marks and citation omitted). "The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him." *Davis v. Alaska*, 415 U.S. 308, 315 (1974) (internal quotation marks and citation omitted). "[A] primary interest secured by [the Sixth Amendment] is the right of cross-examination." *Id.* (internal quotation marks and citation omitted). "Cross-examination of adverse witnesses is the primary means for testing their truth and credibility and is essential to insure the integrity of the fact-finding process." *Sanders*, 1994-NMSC-043, ¶ 22. "Nevertheless, the right of cross-examination of adverse witnesses is not absolute." *Id.* ¶ 23. Rather, "[t]he Confrontation Clause merely guarantees an opportunity for effective cross-examination; it does not guarantee that the defense may cross-examine a witness in whatever way, and to whatever extent, the defense might wish." *Id.* (internal quotation marks and citation omitted). Therefore, "[r]easonable restrictions on the exercise of a constitutional right are permissible." *State v. Herrera*, 1978-NMCA-048, ¶¶ 25, 40, 92 N.M. 7, 582 P.2d 384. With this framework in mind, we turn to Defendant's arguments regarding the testimony of Gerardo.

### a.   Gerardo Nuñez

**{10}** Defendant argues that the district court abused its discretion on two separate grounds by prohibiting him from inquiring into federal drug charges made against Gerardo's uncle. Defendant asserts that the district court abused its discretion when it excluded the testimony about the uncle's drug charges as irrelevant and that the exclusion violated Defendant's Sixth Amendment right to confront witnesses. Defendant explained that he sought to inquire into the uncle's federal indictment for drug trafficking to show that Gerardo was knowledgeable about drug trafficking. Defendant claimed that this was part of his defense to show that it was Gerardo and the other men who stole

---

[2]We note that the State claims that Defendant did not properly preserve his Confrontation Clause claims. Because we conclude there has been no Confrontation Clause violation, we need not address the preservation issue.

the drugs and needed someone to blame. The State objected to Defendant's inquiry on relevance grounds.

**{11}** The district court concluded that Gerardo's uncle's federal drug trafficking charges had limited relevance to Gerardo's knowledge of drug trafficking and therefore that the value of the evidence was substantially outweighed by its prejudicial effect. *See Bailey*, 2015-NMCA-102, ¶ 20 (noting the district court's discretion to exclude evidence when the prejudicial impact substantially outweighs the probative value). Although the district court did not allow Defendant to ask about the federal indictment, it gave Defendant great latitude to ask questions regarding the uncle's status as a drug dealer and to inquire about the knowledge and experience in the drug trafficking trade gained from his uncle, including the time frame during which Gerardo received this information from his uncle. These questions gave Defendant the "opportunity for effective cross-examination" of Gerardo about his experience and knowledge of the drug trade. *Sanders*, 1994-NMSC-043, ¶ 23. The district court did not abuse its discretion in excluding evidence of the uncle's drug charges as irrelevant, and Defendant's right to confrontation was not violated. *See State v. Meadors*, 1995-NMSC-073, ¶¶ 26, 33, 121 N.M. 38, 908 P.2d 731 (holding that the district court did not violate a defendant's right to confrontation or abuse its discretion by excluding testimony it deemed more prejudicial than probative as it was not sufficiently indicative of the fact that the defendant sought to prove).

**b.    Jose Talavera**

**{12}** Next, Defendant contends that the district court violated his right to confront Jose Talavera and abused its discretion by limiting his cross-examination into Jose's cooperation with law enforcement. Defendant also asserts that the district court erred by precluding him from impeaching Jose with sealed pleadings after Jose denied cooperating with authorities. Defendant's arguments lack merit because he was permitted to inquire into Jose's cooperation with both state and federal authorities, and he was only precluded from inquiring into matters for which the district court determined Jose lacked personal knowledge.

**{13}** To challenge a witness's credibility before the jury, a defendant is allowed to inquire into "whether a witness *hoped* to curry favor by cooperating with the prosecution." *Gonzales*, 1999-NMSC-033, ¶ 24 (internal quotation marks and citation omitted). The United States Supreme Court has "recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Delaware v. Van Arsdall*, 475 U.S. 673, 678-79 (1986) (internal quotation marks and citation omitted).

**{14}** Here, Defendant was permitted to inquire into whether Jose cooperated with the State in exchange for a lighter sentence in this case and another unrelated federal case. Defendant was also permitted to question Jose at length about his federal indictment for drug trafficking. Accordingly, he received the opportunity to cross-examine Jose effectively about his cooperation with authorities, and so his right to confrontation was not violated. *Sanders*, 1994-NMSC-043, ¶ 23 (explaining that when a defendant is given

"an opportunity for effective cross-examination" of a witness, there is no Confrontation Clause violation).

**{15}**     Defendant further contends that he was denied the opportunity to impeach Jose with evidence of sealed federal pleadings to show that Jose was lying about cooperating with federal authorities. "Impeachment is crucial to effective cross-examination because it gives a party the opportunity to discredit a witness, so the jury properly has a way to determine whether a witness is untruthful or inaccurate." *State v. Gomez*, 2001-NMCA-080, ¶ 12, 131 N.M. 118, 33 P.3d 669. However, impeachment evidence is still subject to the rules of evidence and, as such, is admitted or excluded at the discretion of the district court. *See id.* ¶¶ 12, 14 (explaining that the district court's admission of impeachment evidence is reviewed for an abuse of discretion and is subject to the rules of evidence).

**{16}**     Defendant attempted to impeach Jose, after he denied being a federal informant, by asking him why certain pleadings in the federal case were sealed, theorizing that the pleadings were sealed because Jose was a federal informant. The district court barred this line of questioning, concluding that Jose lacked the appropriate knowledge to answer why the documents were sealed. Considering Defendant's thorough cross-examination into Jose's charges, sentencing, and potential status as an informant, Defendant was given "the opportunity to discredit [the] witness." *Id*. ¶ 12. Therefore, limiting Defendant's impeachment of Jose due to Jose's lack of personal knowledge was not an abuse of discretion. Rule 11-602 NMRA ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

**{17}**     Having addressed Defendant's evidentiary challenges, we now turn to Defendant's contention that improper jury instructions require reversal.

## B.     Jury Instructions

**{18}**     Defendant argues that the district court committed reversible error in issuing its stepdown instruction to the jury, resulting in a "constitutionally infirm conviction." The infirmity, Defendant contends, manifested itself in two ways. First, he alleges the district court erred by not complying with *State v. Lewis*, which requires the jury to be informed that it may "consider both the greater and lesser offenses under a count in any order it deems appropriate provided it return a verdict of not guilty on the greater offense before the court may accept a verdict on the lesser included offense," 2019-NMSC-001, ¶ 1, 433 P.3d 276. Second, he contends the jury instructions created "serious juror confusion" because they were internally inconsistent and contained undefined terms.

### 1.     Standard of review

**{19}**     Preservation of a party's argument generally determines which of two pertinent standards of review will guide this Court's reviews of claimed error in jury instructions. *State v. Sandoval*, 2011-NMSC-022, ¶ 13, 150 N.M. 224, 258 P.3d 1016. "Under both standards of review, we determine whether a reasonable juror would have been

confused or misdirected by the jury instruction." *Id*. (internal quotation marks and citation omitted). Because we conclude that a reasonable juror would not have been confused or misled and therefore that there was no error in the first instance, we need not consider whether Defendant's argument was preserved.

## 2.    Compliance with *Lewis*

**{20}**    In *Lewis*, this Court considered the "ambiguity in our existing jury instructions regarding the order in which a jury must deliberate on counts which include both greater and lesser included offenses." 2019-NMSC-001, ¶ 1. Recognizing a defendant's interest in preventing jury deliberations from being improperly restricted and the state's interest "in requiring the jury to grapple with the prospect of [a] defendant's guilt of the greatest offense charged," the *Lewis* Court adopted the "modified acquit first approach," providing that "juries shall be instructed that they have discretion to choose the order in which they deliberate on the offenses within a count but that they may not return a verdict on a lesser included offense unless they unanimously find the defendant not guilty on the greater offense." *Id.* ¶¶ 37-38, 40 (internal quotation marks and citation omitted). Defendant claims that the district court violated this holding in *Lewis*. The applicable instruction in this case provided in relevant part:

> You may not find the defendant guilty of an included offense until you have unanimously decided that the defendant is not guilty of the offense that includes the included offense. For example, you may not find the defendant guilty of second degree murder until you have decided that he is not guilty of first degree murder. However, you have the discretion to choose the manner and order in which you deliberate on these offenses.

**{21}**    According to Defendant, the stepdown instruction did not comply with *Lewis* because it did not "state that the jury must acquit of a greater offense before rendering a verdict as to any lesser-included offense." However, a close examination of the first sentence of the given instruction reveals that it satisfies *Lewis*. This sentence instructed the jury that it "may not find [D]efendant guilty of an included offense *until* [the jury] ha[s] unanimously decided that [D]efendant is not guilty of the offense that includes the included offense" (emphasis added). Similarly, under the *Lewis* mandate, a jury cannot return a verdict on the lesser offense *unless* it first "return[s] a unanimous verdict of not guilty on the greater offense." 2019-NMSC-001, ¶ 38. Though the given instruction uses the term "included offense" in place of "lesser offense" and "offense that includes the included offense" in place of "greater offense," both iterations convey the same information to the jury, and therefore the stepdown instruction complied with *Lewis*. It provided the language necessary to prevent the jury from "grappl[ing] with the prospect of [a] defendant's guilt of the greatest offense charged." *Id.* ¶ 37 (internal quotation marks and citation omitted). Because the *Lewis* mandate is satisfied, we decline to reverse on this basis.

## 3.    Juror confusion

**{22}** Defendant next argues that even if the *Lewis* mandate was satisfied, the instructions confused the jury, resulting in error. To obtain reversal of his conviction, Defendant must show that a reasonable juror would be "confused or misdirected" by the given jury instructions. *Sandoval*, 2011-NMSC-022, ¶ 13 (internal quotation marks and citation omitted). The determination of "juror confusion or misdirection may stem not only from instructions that are facially contradictory or ambiguous, but from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. Defendant argues the jury instructions were confusing in three ways: (1) they were inconsistent, (2) they used "the term 'included offense' without defining it," and (3) the curative instruction provided only that the stepdown instruction applied to first-degree willful and deliberate murder, failing to identify the stepdown instruction by instruction number.

**{23}** The stepdown instruction, Instruction No. 18, stated:

You have been instructed on the crimes of first degree murder, second degree murder, and voluntary manslaughter. You must consider each of these crimes. You should be sure that you fully understand the elements of each crime before you deliberate further.

> You will then discuss and decide whether the defendant is guilty of murder in the first degree. If you unanimously agree that the defendant is guilty of murder in the first degree, you will return a verdict of guilty of murder in the first degree. If you do not agree, you should discuss the reasons why there is a disagreement.
>
> If, after reasonable deliberation, you do not agree that the defendant is guilty of murder in the first degree you *should move to* a discussion of murder in the second degree. If you unanimously agree that the defendant is guilty of murder in the second degree, you will return a verdict of guilty of murder in the second degree. If you do not agree you should discuss the reasons why there is a disagreement.
>
> If, after reasonable deliberation, you do not agree that the defendant is guilty of murder in the second degree, *you should consider* whether the defendant is guilty of voluntary manslaughter. If you unanimously agree that the defendant is guilty of voluntary manslaughter, you will return a verdict of guilty of voluntary manslaughter. If you do not agree, you should discuss the reasons why there is a disagreement.
>
> You may not find the defendant guilty of more than one of the foregoing crimes. If you have a reasonable doubt as to whether the defendant committed any one of the crimes, you must determine that he is not guilty of that crime. If you find him not guilty of all of these crimes, you must return a verdict of not guilty.

You may not find the defendant guilty of an included offense until you have unanimously decided that the defendant is not guilty of the offense that includes the included offense. For example, you may not find the defendant guilty of second degree murder until you have decided that he is not guilty of first degree murder. However, you have the discretion to choose the manner and order in which you deliberate on these offenses.

(Emphasis added.)

### a.  Internal inconsistency

**{24}**  Defendant contends the stepdown instruction was internally inconsistent because it prescribed the order in which the jury "must" consider the offenses then later instructed the jury that it had the discretion to choose the order in which it considered the offenses. However, the relevant portion of the instruction does not use the word "must" as Defendant claims, but rather the term "should." The term "should," similar to "may," is permissive or suggestive—not mandatory. *See Cerrillos Gravel Prods., Inc. v. Bd. of Cnty. Comm'rs of Santa Fe Cnty.*, 2004-NMCA-096, ¶ 10, 136 N.M. 247, 96 P.3d 1167 ("The word 'may' is permissive, and is not the equivalent of "shall,' which is mandatory."), *aff'd*, 2005-NMSC-023, ¶ 12, 138 N.M. 126, 117 P.3d 932; *see also, e.g.*, *Aragon v. United States*, 146 F.3d 819, 826 (10th Cir. 1988) (holding that the use of the word "should" is suggestive language, rather than mandatory language). Examining the instructions as a whole, as the jury was instructed to do and as our caselaw requires, *State v. Cabezuela*, 2011-NMSC-041, ¶ 21, 150 N.M. 654, 265 P.3d 705, any permissive suggestion regarding the order of consideration was clarified by the express instruction informing the jury that it had the discretion to consider the offenses in any order it wished.

**{25}**  We see no internal inconsistency in the instruction that would confuse or misdirect a reasonable juror. Furthermore, the stepdown instruction provided the jury with an accurate rendition of the relevant law, as it recites the language of UJI 14-250 NMRA, the stepdown instruction for varying degrees of homicide in place at the time of trial.[3]

### b.  Included offense not defined

**{26}**  Defendant next claims the district court erred in failing to define "included offense" because it resulted in jury confusion. Defendant contends that a layperson would not comprehend that second-degree murder is a lesser-included offense of first-

---

[3]The stepdown instruction was subsequently amended when we recognized an ambiguity in New Mexico's prior uniform stepdown instructions in that it failed to explain "whether a jury may proceed to consideration of a lesser offense if it is unable to agree on the greater offense"—an issue that is not presented by this case. *Lewis*, 2019-NMSC-001, ¶¶ 1, 24. Following *Lewis*, our prior stepdown instructions were replaced with UJI 14-6002B NMRA, which "serve[s] as a single adaptable instruction" adopted to "clarify the process for the jury to deliberate and return verdicts on lesser-included offenses." UJI 14-6002B comm. cmt.

degree murder or that voluntary manslaughter is a lesser-included offense of second-degree murder based on this instruction.

**{27}**     We again apply the error analysis set out in *Sandoval*, 2011-NMSC-022, ¶ 15. We are unpersuaded that the lack of a definition for "included offense" would confuse or misdirect a reasonable juror because the jury was provided with an example of a lesser-included offense. The jury was instructed that it could not find Defendant guilty of second-degree murder without first finding him not guilty of first-degree murder. Because the jury received this helpful example and because the jury never requested a definition, *see State v. Romero*, 2009-NMCA-012, ¶ 25, 145 N.M. 594, 203 P.3d 125 (inferring that the jury was not confused because it did not request a definition), we conclude that the instructions would not confuse or misdirect a reasonable juror and that there is no error. *See Sandoval*, 2011-NMSC-022, ¶ 13.

### c.     Curative instruction

**{28}**     Defendant also asserts that the jury was confused by the curative instruction given in response to its question about whether it could "charge both felony murder *and* first-degree murder/second-degree murder/manslaughter" (emphasis added). Addressing the jury's question, the district court gave a curative instruction stating, "The step-down instruction applies only to willful and deliberate murder." Defendant contends that the curative instruction confused the jury both because it did not refer to the stepdown instruction by its number (eighteen), leaving the jury with no way to know that the curative instruction applied to the stepdown instruction and because the curative instruction only refers to willful and deliberate murder, resulting in "an ambiguous limitation which could be reasonably read to limit" application of the stepdown instruction to only first-degree murder. Defendant claims that the jury's not-guilty verdicts for second-degree murder and voluntary manslaughter are clear evidence of this confusion.

**{29}**     Again applying the *Sandoval* analysis to Defendant's claimed error in the curative instruction, this Court must first determine if the lack of reference to Instruction No. 18 and the fact that the instruction was limited to the explanation that the stepdown instruction applied only to willful and deliberate murder would confuse or misdirect a reasonable juror. *Sandoval*, 2011-NMSC-022, ¶ 15. Here, the jury did not express any confusion as to which instruction the curative instruction applied. The jury also did not express any confusion in relation to whether its consideration should be limited to first-degree murder. The jury's lack of inquiry suggests that it was not confused. *See, e.g.*, *Romero*, 2009-NMCA-012, ¶ 25 (inferring that the jury was not confused because it did not request clarification). While Defendant contends that this confusion is demonstrated by the jury returning verdicts of not guilty for second-degree murder and voluntary manslaughter, the jury's act of expressly entering these not-guilty verdicts instead demonstrates that it did not limit its consideration to first-degree murder and also understood the stepdown instruction, which explained that the jury "may not find the defendant guilty of more than one of the foregoing crimes." These verdicts, along with the jury's conviction of felony murder, demonstrate that the jury connected the curative

instruction to the stepdown instruction. Therefore, we conclude that the jury was not confused or misdirected by the curative instruction.

**{30}** Instead, the jury appeared confused as to whether it could convict on both felony murder *and* the other homicide offenses charged, questioning whether it could "charge both felony murder *and* first-degree murder/second-degree murder/manslaughter" (emphasis added). The district court correctly interpreted the jury's question as confusion related to whether the jury could convict for felony murder *and* one of the other charged homicide offenses. The district court noted that the confusion was likely due to the stepdown instruction referring to first-degree murder, but not differentiating between first-degree, felony murder and willful and deliberate first-degree murder. The jury's guilty verdicts for both felony murder and willful and deliberate first-degree murder support that this was the point of confusion and that the confusion was resolved by the curative instruction. Because any confusion was cured, reversal is unwarranted. *See State v. Parish*, 1994-NMSC-073, ¶¶ 4, 13, 118 N.M. 39, 878 P.2d 988 (explaining that a confusing instruction, in contrast with a legally erroneous instruction, may be cured when examining the instructions as a whole).

## C.    Inconsistent Verdicts

**{31}** Defendant next claims that reversal is warranted because the verdicts are legally inconsistent. Defendant insists that the verdicts acquitting him of the lesser-included offenses, but convicting him of first-degree murder are inconsistent because the charged homicide offenses share the elements that (1) Defendant killed Victim and (2) that this occurred in New Mexico on or about January 11, 2008. Defendant argues that due to not-guilty verdicts for second-degree murder and voluntary manslaughter, inconsistency is apparent in the guilty verdicts as to the findings of mens rea. Defendant says "it is equally as possible that the jury determined that there was not sufficient evidence to convict" on the shared essential elements as it is that the jury's verdict shows a rejection of the distinct elements—the mens rea. Defendant reasons that the possibility that the jury found the shared elements for first-degree murder but not for second-degree murder and voluntary manslaughter renders the verdicts legally inconsistent.

**{32}** We disagree. This Court reviews inconsistent convictions, not inconsistent verdicts. When the evidence is sufficient to support the verdict of conviction, we will not speculate as to why the jury acquitted a defendant of other charges—even if the conviction and acquittal are allegedly inconsistent. To examine the verdict of acquittal would require us to rule based on pure speculation or else would require an inquiry into the jury's deliberations, both of which we decline to undertake. *See United States v. Powell*, 469 U.S. 57, 66 (1984)

**{33}** Whether a legal inconsistency in a jury's verdict requires acquittal is a matter of law reviewed de novo. *United States v. Pierce*, 940 F.3d 817, 821 (2d Cir. 2019). The general rule is that "[c]onsistency in the verdict is not necessary." *Dunn v. United States*, 284 U.S. 390, 393 (1932). The state must prove each element of a charged offense beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970) ("[T]he Due

Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."). Where there is sufficient evidence to support the conviction, reversal is not required. *See State v. Fernandez*, 1994-NMCA-056, ¶ 39, 117 N.M. 673, 875 P.2d 1104 (explaining that reversal of a conviction supported by sufficient evidence is not required even if it is irreconcilable with an acquittal because appellate courts review convictions—not acquittals).

**{34}**    The rule set out in *Dunn* was upheld more than fifty years later in *Powell*, 469 U.S. at 69. In *Powell*, the defendant was both acquitted of the predicate offenses of conspiracy to possess cocaine and possession of cocaine and convicted of the compound offense of "using the telephone to facilitate those offenses." *Id.* The defendant in *Powell*, like Defendant in this case, asserted that the alleged inconsistency between the convicted offense and acquitted offenses necessarily required reversal. *Id.* at 60. The *Powell* Court disagreed, holding that any inconsistency between acquittal and conviction did not require reversal because "[i]t is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense." *Id.* at 65. It reasoned that "an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake." *Id.* at 66. Instead, a criminal defendant, the *Powell* Court explained, is sufficiently protected "against jury irrationality or error by the independent review of the sufficiency of the evidence" as to those counts upon which a defendant is convicted. *Id.* at 67.

**{35}**    Even though New Mexico is not bound by *Powell*, *see, e.g.*, *State v. Halstead*, 791 N.W.2d 805, 810 (Iowa 2010) (explaining that, because the *Powell* Court did not base its decision on constitutional considerations, states are free to address inconsistent verdicts as they see fit in state criminal proceedings), we are persuaded by its reasoning and hereby expressly adopt it in New Mexico. Further, we view the *Powell* approach as consistent with the approach taken by our lower courts over the past fifty years. *See, e.g.*, *State v. Roper*, 2001-NMCA-093, ¶ 24, 131 N.M. 189, 34 P.3d 133 ("We have frequently said that our business is to review the verdicts of conviction, and not concern ourselves with any alleged acquittals, and thus we do not entertain contentions alleging that the verdicts are irreconcilable."); *State v. Leyba*, 1969-NMCA-030, ¶¶ 36-37, 80 N.M. 190, 453 P.2d 211 ("The verdict of acquittal is beyond our control. . . . Since we may only speculate as to why the jury acquitted defendant . . . , that acquittal, even though irreconcilable with conviction . . . , does not require the conviction to be set aside as a matter of law."); *State v. Nichols*, 2016-NMSC-001, ¶¶ 36-37, 363 P.3d 1187 (discussing inconsistent verdicts in dicta and basing its "ultimate decision" not on any alleged inconsistency, but upon insufficient evidence to support the conviction). Indeed, the majority of jurisdictions have applied the rule announced in *Dunn* and reaffirmed in *Powell*. *See, e.g.*, *State v. Davis*, 466 S.W.3d 49, 72-74 (Tenn. 2015) (recognizing that inconsistent verdicts can take multiple forms, and when there is an alleged inconsistency between a conviction and an acquittal, the majority of jurisdictions follow *Dunn* and *Powell* in declining to upset a conviction as long as there is sufficient evidence); *see also Beattie v. State*, 924 N.E.2d 643, 649 (Ind. 2010)

(reasoning that a jury may return inconsistent verdicts for a number of reasons, and "agree[ing] with and adopt[ing] the federal rule expressed by the United States Supreme Court in *Dunn* and *Powell,* which has been for the most part the prevailing rule of Indiana jurisprudence").

**{36}** Applying *Powell*, Defendant has not presented this Court with inconsistent convictions, and we decline to examine the jury's rationale for acquitting Defendant of second-degree murder and voluntary manslaughter while convicting him of willful and deliberate first-degree murder because such an examination would require that we rule based on pure speculation or else inquire into the jury's deliberations, both endeavors that we decline to undertake. *See Powell*, 469 U.S. at 66. As Defendant concedes and the record reflects, the State presented sufficient evidence to support the conviction of willful and deliberate first-degree murder, and we will not vacate that conviction. *See Fernandez*, 1994-NMCA-056, ¶ 39, (declining to vacate a conviction supported by substantial evidence acknowledging that "we review the verdict of conviction, not the verdict of acquittal"); *see also Powell*, 469 U.S. at 69 (explaining that, when a defendant is given the benefit of acquittal on certain counts, "it is neither irrational nor illogical to require [a defendant] to accept the burden of conviction on the counts on which the jury convicted").

## D.    Implied Acquittal and Double Jeopardy

**{37}** We now turn to Defendant's argument that his conviction for willful and deliberate first-degree murder should be vacated under the implied acquittal doctrine as this conviction violates his right to be free from double jeopardy. For the reasons explained below, both the implied acquittal doctrine and double jeopardy are inapposite here.

### 1.    Implied acquittal doctrine

**{38}** Defendant contends that *State v. Montoya*, an implied acquittal case, supports reversal. 2013-NMSC-020, ¶ 25, 306 P.3d 426. In *Montoya*, we held that the defendant, having been acquitted by a jury of the lesser offense of second-degree murder, was constitutionally protected from subsequent prosecution for that offense or for a related greater offense because acquittal of the lesser offense resulted in an implied acquittal of the greater offense. *Id.* ¶¶ 25-27.

**{39}** *Montoya* is of no assistance to Defendant because the implied acquittal doctrine has not been extended to cases where, as here, the jury was *not* silent on the greater offense but rather expressly convicted the defendant of the greater offense.[4] *See United*

---

4Defendant insists that Florida caselaw supports his position. The Florida cases Defendant cites are inapplicable because they did not hold that the implied acquittal doctrine is automatically invoked where the jury convicts on the greater offense. Instead, the Florida Supreme Court has made clear that the implied acquittal doctrine is limited to situations where the jury is silent on the greater offense. *Greene v. City of Gulfport*, 103 So. 2d 115, 116 (Fla. 1958) (precluding subsequent trial for the higher-grade offense "since the verdict convicting of one of the lower grades, but saying nothing as to the higher, necessarily implies a finding of not guilty of the higher offense").

*States v. Bordeaux*, 121 F.3d 1187, 1192 (8th Cir. 1997) (rejecting the application of the applied acquittal doctrine where the jury was not silent on the greater offense); *Saulsberry v. Lee*, 937 F.3d 644, 649 (6th Cir. 2019) (explaining that the implied acquittal doctrine only applies where "the jury remained silent in the face of a free choice to convict"). Defendant concedes that there is no New Mexico or federal authority to support his position that the implied acquittal doctrine operates even where the jury has expressly convicted on the greater offense. And where Defendant has not provided authority to support his position, we may assume no such authority exists. *Lee v. Lee (In re Doe)*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (noting that where a party fails to cite authority, this Court assumes no such authority exists).

## 2. Double jeopardy

**{40}** Defendant also asserts that his conviction violates double jeopardy and that retrial for any of the homicide offenses would be barred by double jeopardy. "The Fifth Amendment of the United States Constitution prohibits double jeopardy and is made applicable to New Mexico by the Fourteenth Amendment." *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747. The Double Jeopardy Clause of the Fifth Amendment guarantees that no person shall "be twice put in jeopardy of life or limb" for the same offense. U.S. Const. amend. V. Double jeopardy is implicated where there is "(1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, [or] (3) multiple punishments for the same offense." *Montoya*, 2013-NMSC-020, ¶ 23 (internal quotation marks and citation omitted). Because this case does not involve any of the enumerated protections, double jeopardy is not implicated.

**{41}** First, there has only been one prosecution, and while Defendant insists retrial would be barred on double jeopardy grounds, as we determine no error below warranting reversal, retrial is not contemplated. In addition, this is not a multiple punishment case. Defendant was only left with one homicide conviction after his felony murder conviction was merged, and he does not argue that his convictions for conspiracy, evidence tampering, and kidnapping are punishments for the same offense in violation of double jeopardy. Rather, Defendant insists that his right to be free from double jeopardy is violated because he was simultaneously convicted of willful and deliberate first-degree murder and acquitted of second-degree murder and voluntary manslaughter. Defendant fails to make a justifiable double jeopardy argument.

**{42}** For the first time at oral argument, Defendant argued that the language of the New Mexico Constitution provides greater protection than its federal counterpart and called upon this Court to expand the protections of the New Mexico Constitution based on principles of res judicata and collateral estoppel to cases where, as here, a defendant has been convicted on a greater offense but acquitted on a lesser-included offense. However, under either constitution, double jeopardy and principles of res judicata and collateral estoppel are simply not implicated where there has been neither multiple punishments nor successive prosecutions. *See State v. Gallegos*, 2011-NMSC-027, ¶ 30, 149 N.M. 704, 254 P.3d 655 (providing that both state and federal double jeopardy clauses are applicable when there have been successive prosecutions or

multiple punishments); *Alba v. Hayden*, 2010-NMCA-037, ¶ 6, 148 N.M. 465, 237 P.3d 767 (explaining that res judicata and collateral estoppel "only apply to successive litigation and not to issues or claims raised in the same proceeding"). Therefore, we do not further entertain Defendant's double jeopardy and estoppel arguments.

## E.       Cumulative Error

**{43}**     Finally, Defendant asserts that, even if the claimed errors above individually do not warrant reversal, cumulative error deprived him of a fair trial requiring reversal. In light of our conclusion that the district court did not err, there can be no cumulative error. *See State v. Casillas*, 2009-NMCA-034, ¶ 51, 145 N.M. 783, 205 P.3d 830.

## III.      CONCLUSION

**{44}**     For the foregoing reasons, we affirm.

**{45}     IT IS SO ORDERED.**

**JULIE J. VARGAS, Justice**

**WE CONCUR:**

**C. SHANNON BACON, Chief Justice**

**MICHAEL E. VIGIL, Justice**

**DAVID K. THOMSON, Justice**